NORWEST BANK WORTHINGTON ET AL. *v.*
AHLERS ET UX.

No. 86–958.   Argued January 12, 1988—Decided March 7, 1988

198

WHITE, J., delivered the opinion of the Court, in which all other Members joined, except KENNEDY, J., who took no part in the consideration or decision of the case.

*Gordon B. Conn, Jr.*, argued the cause for petitioners. With him on the brief were *Michael R. Stewart, Dennis M. Ryan, A. Patrick Leighton,* and *David A. Kastelic*.

*William L. Needler* argued the cause for respondents. With him on the brief were *James C. Truax* and *Francis E. Stepnowski.**

JUSTICE WHITE delivered the opinion of the Court.

In this case, the Court of Appeals found that respondents' promise of future "labor, experience, and expertise" permitted confirmation of their Chapter 11 reorganization plan over the objections of their creditors, even though the plan violated the "absolute priority rule" of the Bankruptcy Code. Because we find this conclusion at odds with the Code and our cases, we reverse.

I

Respondents operate a failing family farm in Nobles County, Minnesota. Between 1965 and 1984 they obtained loans from petitioners, securing the loans with their farmland, machinery, crops, livestock, and farm proceeds. In November 1984, respondents defaulted on their loan payments to petitioner Norwest Bank Worthington; at the time,

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Cohen,* and *Roy T. Englert, Jr.;* for the American Bankers Association by *John J. Gill III* and *Michael F. Crotty;* for the American College of Real Estate Lawyers by *Robert M. Zinman, Bruce S. Lane, Edward I. Cutler,* and *David A. Richards;* for the American Council of Life Insurance by *Phillip E. Stano, Jack H. Blaine, Robert M. Zinman,* and *Edward J. Zimmerman;* and for the Nebraska Bankers Association, Inc., by *William B. Brandt.*

A brief of *amici curiae* urging affirmance was filed for the State of Arkansas et al. by *Phillip L. Kunkel* and *Raymond T. Nimmer,* and by the Attorneys General for their respective States as follows: *Steve Clark* of Arkansas, *Joseph I. Lieberman* of Connecticut, *Thomas J. Miller* of Iowa, *Neil F. Hartigan* of Illinois, *David L. Armstrong* of Kentucky, *Hubert H. Humphrey III* of Minnesota, *Mike Greely* of Montana, *Robert M. Spire* of Nebraska, *Robert Abrams* of New York, *Nicholas Spaeth* of North Dakota, *T. Travis Medlock* of South Carolina, *Roger Tellinghuisen* of South Dakota, and *Jim Mattox* of Texas.

the aggregate loan balance owed the petitioners exceeded $1 million.

Following the default, Norwest filed a replevin action in Minnesota state court seeking possession of the farm equipment respondents had pledged as security. However, two weeks later respondents obtained an automatic stay of the replevin proceedings, when they filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. See 11 U. S. C. § 362(a) (1982 ed. and Supp. IV).

Petitioners filed motions in the Bankruptcy Court for relief from the automatic stay. 11 U. S. C. § 362(d) (1982 ed., Supp. IV). After decisions by the Bankruptcy and the District Courts, these motions were ultimately considered by the Court of Appeals, which prohibited petitioners from repossessing any equipment, pending a determination by the District Court of the probability of success of a reorganization plan to be filed by respondents. App. to Pet. for Cert. A–76—A–77. On remand, the District Court found respondents' reorganization plan to be "utter[ly] unfeasibl[e]." *Id.*, at A–86. It therefore affirmed the Bankruptcy Court's initial decision to grant petitioners relief from the automatic stay.

On appeal, the Court of Appeals reversed. It found that respondents could file a feasible reorganization plan. 794 F. 2d 388, 399 (CA8 1986). Consequently, the Court of Appeals remanded the case with instructions that the Bankruptcy Court entertain and confirm a reorganization plan which comported with an outline suggested in a lengthy appendix to the Eighth Circuit's opinion. *Id.*, at 408–414.

In reaching this conclusion, the Court of Appeals rejected petitioners' contention that, because of the "absolute priority rule" in the Bankruptcy Code, 11 U. S. C. § 1129(b)(2)(B)(ii) (1982 ed. and Supp. IV), their legitimate objections to any reorganization plan which allowed respondents to retain an interest in the farm property was sufficient to bar confirmation

of such a plan.[1]  Petitioners contended that the absolute priority rule prohibited respondents from retaining their equity interest in the farm, which is junior to the creditors' unsecured claims.  But the Court of Appeals, relying on this Court's decision in *Case* v. *Los Angeles Lumber Products Co.*, 308 U. S. 106 (1939), held that the absolute priority rule did not bar respondents from retaining their equity interest in the farm if they contributed "money or money's worth" to the reorganized enterprise.  It further concluded that respondents' "yearly contributions of labor, experience, and expertise" would constitute a contribution of "money or money's worth," and therefore would permit confirmation of a reorganization plan over petitioners' objections.  794 F. 2d, at 402–403.  Judge John Gibson, in dissent, criticized the majority's application of the absolute priority rule and its read-

---

[1] In relevant part, 11 U. S. C. § 1129(b) (1982 ed. and Supp. IV) provides:

"(1) . . . [T]he court . . . shall confirm the plan . . . if the plan . . . is fair and equitable . . . .

"(2) . . . [T]he condition that a plan be fair and equitable . . . includes the following requirements:

"(B)  With respect to a class of unsecured claims —

"(i)  the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

"(ii)  the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."

Petitioners contended, and the Court of Appeals agreed, that they must be treated as unsecured creditors for purpose of any reorganization plan because their claims were substantially undersecured.  See 794 F. 2d 388, 399 (CA8 1986); 11 U. S. C. § 506(a).  Petitioners further argued, and the Court of Appeals also agreed, that any reorganization plan for respondents could not comply with § 1129(b)(2)(B)(i), because respondents could not possibly provide petitioners with property equal to the allowed amount of their claims.  See 794 F. 2d, at 401.

Thus, the Court of Appeals concluded that respondents' reorganization plan would have to comply with § 1129(b)(2)(B)(ii)—the codification of the absolute priority rule—in order to be confirmed.  *Ibid.*

ing of *Los Angeles Lumber* as "unprecedented, illogical, and unfair." 794 F. 2d, at 406. He concluded that the absolute priority rule barred respondents' retention of an equity interest in the farm over petitioners' legitimate objections.

After the Eighth Circuit—sharply divided—denied rehearing en banc, *id.*, at 414–415, petitioners sought review by this Court. We granted certiorari to consider the Court of Appeals' application of the absolute priority rule, 483 U. S. 1004 (1987), and now reverse.

## II

As the Court of Appeals stated, the absolute priority rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." 794 F. 2d, at 401. The rule had its genesis in judicial construction of the undefined requirement of the early bankruptcy statute that reorganization plans be "fair and equitable." See *Northern Pacific R. Co.* v. *Boyd*, 228 U. S. 482, 504–505 (1913); *Louisville Trust Co.* v. *Louisville, N. A. & C. R. Co.*, 174 U. S. 674, 684 (1899). The rule has since gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978. See 11 U. S. C. § 1129(b)(2)(B)(ii) (1982 ed., Supp. IV). Under current law, no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections (absent certain conditions not relevant here) if it fails to comply with the absolute priority rule.

There is little doubt that a reorganization plan in which respondents retain an equity interest in the farm is contrary to the absolute priority rule.[2] The Court of Appeals did not

---

[2] Respondents do not contest this conclusion, but rather, argue (1) that their proposal to retain an equity interest in the farm and equipment is confirmable under an exception to the absolute priority rule, Brief for Respondents 21–25, and (2) that the rule does not (or should not) apply to their reorganization plan for various reasons, *id.*, at 14–21. For rea-

suggest otherwise in ruling for respondents, but found that such a plan could be confirmed over petitioners' objections because of an "exception" or "modification" to the absolute priority rule recognized in this Court's cases.

The Court of Appeals relied on the following dicta in *Case v. Los Angeles Lumber Products Co., supra,* at 121–122:

> "It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor. . . .
>
> "[W]e believe that to accord 'the creditor of his full right of priority against the corporate assets' where the debtor is insolvent, the stockholder's participation must be based on a contribution in money or money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholder."

The Court of Appeals found this language applicable to this case, concluding that respondents' future contributions of "labor, experience, and expertise" in running the farm—because they have "value" and are "measurable"—are "money or money's worth" within the meaning of *Los Angeles Lumber.* 794 F. 2d, at 402. We disagree.[3]

─────────

sons we discuss *infra,* at 204–206, and in Part III, we find these arguments unpersuasive.

[3] The United States, as *amicus curiae,* urges us to reverse the Court of Appeals' ruling and hold that codification of the absolute priority rule has eliminated any "exception" to that rule suggested by *Los Angeles Lumber.* See Brief for United States as *Amicus Curiae* 17–23. Relying on the statutory language and the legislative history, the United States argues that the 1978 Bankruptcy Code "dropped the infusion-of-new-capital exception to the absolute priority rule." *Id.,* at 22.

We need not reach this question to resolve the instant dispute. As we discuss *infra,* at 204–206, we think it clear that even if the *Los Angeles Lumber* exception to the absolute priority rule has survived enactment of the Bankruptcy Code, this exception does not encompass respondents' promise to contribute their "labor, experience, and expertise" to the reorganized enterprise.

Thus, our decision today should not be taken as any comment on the continuing vitality of the *Los Angeles Lumber* exception—a question which

*Los Angeles Lumber* itself rejected an analogous proposition, finding that the promise of the existing shareholders to pledge their "financial standing and influence in the community" and their "continuity of management" to the reorganized enterprise was "[in]adequate consideration" that could not possibly be deemed "money's worth." 308 U. S., at 122. No doubt, the efforts promised by the *Los Angeles Lumber* equity holders—like those of respondents—had "value" and would have been of some benefit to any reorganized enterprise. But ultimately, as the Court said in *Los Angeles Lumber*, "[t]hey reflect merely vague hopes or possibilities." *Id.*, at 122–123. The same is true of respondents' pledge of future labor and management skills.

Viewed from the time of approval of the plan, respondents' promise of future services is intangible, inalienable, and, in all likelihood, unenforceable. It "has no place in the asset column of the balance sheet of the new [entity]." *Los Angeles Lumber*, 308 U. S., at 122–123. Unlike "money or money's worth," a promise of future services cannot be exchanged in any market for something of value to the creditors *today*. In fact, no decision of this Court or any Court of Appeals, other than the decision below, has ever found a promise to contribute future labor, management, or expertise sufficient to qualify for the *Los Angeles Lumber* exception to the absolute priority rule.[4] In short, there is no

---

has divided the lower courts since passage of the Code in 1978. Compare, *e. g.*, *In re Sawmill Hydraulics, Inc.*, 72 B. R. 454, 456, and n. 1 (Bkrtcy. Ct. CD Ill. 1987), with, *e. g.*, *In re Pine Lake Village Apartment Co.*, 19 B. R. 819, 833 (Bkrtcy. Ct. SDNY 1982). Rather, we simply conclude that even if an "infusion-of-'money-or-money's-worth'" exception to the absolute priority rule has survived the enactment of § 1129(b), respondents' proposed contribution to the reorganization plan is inadequate to gain the benefit of this exception.

[4] "[P]revious attempts to qualify non-capital equity in the absolute priority context have been unanimously rejected." Koger & Acconcia, In re Ahlers: Capitalizing on Sweat, 42 J. Mo. Bar 455, 458 (1986). See also 794 F. 2d, at 407 (Gibson, J., dissenting); *In re Baugh*, 73 B. R. 414, 418

way to distinguish between the promises respondents proffer here and those of the shareholders in *Los Angeles Lumber;* neither is an adequate contribution to escape the absolute priority rule.

Respondents suggest that, even if their proposed contributions to the reorganized farm do not fit within the *Los Angeles Lumber* dicta, they do satisfy some broader exception to the absolute priority rule. Brief for Respondents 23–24. But no such broader exception exists. Even if Congress meant to retain the *Los Angeles Lumber* exception to the absolute priority rule when it codified the rule in Chapter 11—a proposition that can be debated, see n. 3, *supra*—it is clear that Congress had no intention to expand that exception any further. When considering adoption of the current Code, Congress received a proposal by the Bankruptcy Commission to modify the absolute priority rule to permit equity holders to participate in a reorganized enterprise based on their contribution of "continued management . . . essential to the business" or other participation beyond "money or money's worth." See H. R. Doc. No. 93–137, pt. 1, pp. 258–259 (1973). This proposal—quite similar to the Court of Appeals' holding in this case—prompted adverse reactions from numerous sources.[5] Congress ultimately rejected the proposed liberalization of

(Bkrtcy. Ct. ED Ark. 1987); *In re Pecht,* 57 B. R. 137, 139–141 (Bkrtcy. Ct. ED Va. 1986).

In support of their position, respondents rely extensively on *SEC* v. *United States Realty & Improvement Co.,* 310 U. S. 434 (1940). See Tr. of Oral Arg. 31–33, 35–37. However, the relevant portion of that case concerned a chapter of the old bankruptcy statutes under which the absolute priority rule did not apply. See *SEC* v. *United States Realty & Improvement Co., supra,* at 453–454. Thus, that case is wholly inapposite here.

[5] See, *e. g.,* Hearings on S. 235 and S. 236 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., pt. 2, p. 1044 (1975) (statement of Prof. Vernon Countryman); *id.,* at 710 (statement of Phillip A. Loomis, Jr., Comm'r of the Securities and Exchange Comm'n); Brudney, The Bankruptcy Commission's Proposed "Modifications" of the Absolute Priority Rule, 48 Am. Bankr. L. J. 305, 336–339 (1974).

the absolute priority rule and adopted the codification of the rule now found in 11 U. S. C. § 1129(b)(2)(B)(ii) (1982 ed. and Supp. IV). "This [section] codifies the absolute priority rule from the dissenting class on down." See H. R. Rep. No. 95–595, p. 413 (1977). We think the statutory language and the legislative history of § 1129(b) clearly bar any expansion of any exception to the absolute priority rule beyond that recognized in our cases at the time Congress enacted the 1978 Bankruptcy Code.

In sum, we find no support in the Code or our previous decisions for the Court of Appeals' application of the absolute priority rule in this case. We conclude that the rule applies here, and respondents' promise of future labor warrants no exception to its operation.

## III

Respondents advance two additional arguments seeking to obviate the conclusion mandated by the absolute priority rule.

## A

Respondents first advance a variety of "equitable arguments" which, they say, prevent the result we reach today. Respondents contend that the nature of bankruptcy proceedings—namely, their status as proceedings in "equity"—prevents petitioners from inequitably voting in the class of unsecured creditors, and requires that a "fair and equitable" reorganization plan in the best interests of all creditors and debtors be confirmed. See Brief for Respondents 14–16, 23–24. Similarly, the Court of Appeals found it significant that—in its view—respondents' wholly unsecured creditors (as opposed to petitioners, who have partially secured claims) would fare better under the proposed reorganization plan than if the farm was liquidated. 794 F. 2d, at 402.

The short answer to these arguments is that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code. The Code provides that undersecured creditors can

vote in the class of unsecured creditors, 11 U. S. C. § 506(a), the Code provides that a "fair and equitable" reorganization plan is one which complies with the absolute priority rule, 11 U. S. C. § 1129(b)(2)(B)(ii) (1982 ed. and Supp. IV), and the Code provides that it is up to the creditors—and not the courts—to accept or reject a reorganization plan which fails to provide them adequate protection or fails to honor the absolute priority rule, 11 U. S. C. § 1126 (1982 ed. and Supp. IV).

The Court of Appeals may well have believed that petitioners or other unsecured creditors would be better off if respondents' reorganization plan was confirmed. But that determination is for the creditors to make in the manner specified by the Code. 11 U. S. C. § 1126(c). Here, the principal creditors entitled to vote in the class of unsecured creditors (*i. e.*, petitioners) objected to the proposed reorganization. This was their prerogative under the Code, and courts applying the Code must effectuate their decision.

## B

Respondents further argue that the absolute priority rule has no application in this case, where the property which the junior interest holders wish to retain has no value to the senior unsecured creditors. In such a case, respondents argue, "the creditors are deprived of nothing if such a so-called 'interest' continues in the possession of the reorganized debtor." Brief for Respondents 19. Here, respondents contend, because the farm has no "going concern" value (apart from their own labor on it), any equity interest they retain in a reorganization of the farm is worthless, and therefore is not "property" under 11 U. S. C. § 1129(b)(2)(B)(ii) (1982 ed. and Supp. IV).

We join with the consensus of authority which has rejected this "no value" theory.[6] Even where debts far exceed the

---

[6] Respondents note that one Bankruptcy Court has accepted the "no value" theory in a case similar to this one. See *In re Star City Rebuilders,*

current value of assets, a debtor who retains his equity interest in the enterprise retains "property." Whether the value is "present or prospective, for dividends or only for purposes of control" a retained equity interest is a property interest to "which the creditors [are] entitled . . . before the stockholders [can] retain it for any purpose whatever." *Northern Pacific R. Co.* v. *Boyd,* 228 U. S., at 508. Indeed, even in a sole proprietorship, where "going concern" value may be minimal, there may still be some value in the control of the enterprise; obviously, also at issue is the interest in potential future profits of a now-insolvent business. See *SEC* v. *Canandaigua Enterprises Corp.,* 339 F. 2d 14, 21 (CA2 1964) (Friendly, J.). And while the Code itself does not define what "property" means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad. " '[P]roperty' includes both tangible and intangible property." See H. R. Rep. No. 95–595, at 413.

Moreover, respondents' "no value" theory is particularly inapposite in this case. This argument appears not to have been presented to the Eighth Circuit, which implicitly concluded—to the contrary of respondents' position here—that the equity interest respondents desire to retain has some value. See 794 F. 2d, at 402–403. Even cursory consideration reveals that the respondents' retained interest under the plan might be "valuable" for one of several reasons. For example, the Court of Appeals provided that respondents would be entitled to a share of any profits earned by the sale of secured property during the reorganization period, *id.,* at

---

*Inc.,* 62 B. R. 983, 988–989 (WD Va. 1986). But even in so doing, the Bankruptcy Court acknowledged that the bulk of authority was to the contrary. See *id.,* at 989; see also *In re Modern Glass Specialists, Inc.,* 42 B. R. 139, 140–141 (Bkrtcy. Ct. ED Wisc. 1984); *In re Huckabee Auto Co.,* 33 B. R. 132, 141 (Bkrtcy. Ct. MD Ga. 1981); *In re Landau Boat Co.,* 8 B. R. 436, 438–439 (Bkrtcy. Ct. WD Mo. 1981).

Petitioners contend that the *Star City* decision is the *only* one to accept the "no value" theory. See Tr. of Oral Arg. 16. Respondents did not contest this assertion or provide authority to the contrary.

403, and n. 18 —an interest which can hardly be considered "worthless." And there is great common sense in petitioners' contention that "obviously, there is some going concern value here, or the parties would not have been litigating over it for the last three years." Tr. of Oral Arg. 15–16.

Consequently, we think that the interest respondents would retain under any reorganization must be considered "property" under § 1129(b)(2)(B)(ii), and therefore can only be retained pursuant to a plan accepted by their creditors or formulated in compliance with the absolute priority rule. Since neither is true in this case, the Court of Appeals' judgment for respondents cannot stand.

## IV

In rejecting respondents' position, we do not take lightly the concerns which militated the Eighth Circuit towards its result. As a Bankruptcy Judge commented on the Court of Appeals' decision in this case:

> "We understand the motivation behind the majority opinion in *Ahlers*. Farm bankruptcies are in a state of crisis and we, too, sympathize with the plight of the American farmer. Nevertheless, the solution proposed by the *Ahlers* majority is contrary to the Bankruptcy Code and a long line of case law." *In re Stegall*, 64 B. R. 296, 300 (Bkrtcy. Ct. CD Ill. 1986).

Family farms hold a special place in our Nation's history and folklore. Respondents and *amici* paint a grim picture of the problems facing farm families today, and present an eloquent appeal for action on their behalf.[7] Yet relief from current farm woes cannot come from a misconstruction of the applicable bankruptcy laws, but rather, only from action by Congress.[8]

---

[7] See Brief for Respondents 8–11; Brief for State of Arkansas et al. as *Amici Curiae* 1–2.

[8] Even if current farm problems "justified" a judicial modification of the absolute priority rule along the line of the Court of Appeals' opinion, not

The error of the Court of Appeals' approach is further revealed by an examination of a measure Congress has recently enacted to cope with these very same concerns, the Family Farmers Bankruptcy Act of 1986, Pub. L. 99–554, § 255, 100 Stat. 3105–3114. The Act creates a new Chapter 12 bankruptcy proceeding, under which family farmers can retain an equity interest in their farms while making loan repayments under a reorganization plan. See 11 U. S. C. § 1201 *et seq.* (1982 ed., Supp. IV).[9]

The legislative history of the Act makes it clear that one of Congress' principal concerns in adopting Chapter 12 was the difficulties farmers encountered in seeking to reorganize under Chapter 11.[10] And yet, as respondents concede, the Court of Appeals' decision here creates a method of proceeding under Chapter 11 which is far more advantageous to farmers than is Chapter 12. See Brief for Respondents 6–9; Tr. of Oral Arg. 23–25. Thus, given respondents' reading of Chapter 11, Congress enacted a relief provision in Chapter 12

---

the least of the problems with the decision below is that there is no way to limit it to family farms, or even to small businesses generally. The shareholders of any corporate debtor might be able to evade the absolute priority rule under the Eighth Circuit's reasoning; such a result surely cannot be squared with the case law or the Code as they are discussed *supra.*

[9] Respondents apparently cannot qualify for relief under Chapter 12 because they do not meet the requirements that Congress has adopted in defining what is an eligible "family farm" for purposes of Chapter 12. See Tr. of Oral Arg. 23; 11 U. S. C. § 101(17) (1982 ed., Supp. IV).

In addition, respondents may be disqualified from filing under Chapter 12 because they had previously filed under Chapter 11. The Bankruptcy Courts are divided on the issue. Compare, *e. g., In re Big Dry Angus Ranch, Inc.,* 69 B. R. 695, 699–701 (Mont. 1987), with, *e. g., In re B. A. V., Inc.,* 68 B. R. 411, 412–413 (Colo. 1986).

[10] See 132 Cong. Rec. 28592 (1986) (statement of Sen. Thurmond); *id.,* at 28593 (statement of Sen. Grassley). Congress seemed particularly aware of the specific obstacle that the absolute priority rule posed to farm reorganizations. See Anderson, An Analysis of Pending Bills to Provide Family Farm Debtor Relief Under the Bankruptcy Code, reprinted in 132 Cong. Rec. 28593, 28599 (1986).

which is less favorable to its intended beneficiaries than is current law. But in adopting Chapter 12, Congress thought it was doing just the opposite.[11] "[W]here, as here, Congress adopts a new law . . . [it] normally can be presumed to have had knowledge of the interpretation given to the [old] law." *Lorillard* v. *Pons*, 434 U. S. 575, 581 (1978). We think Congress' understanding of Chapter 11 and its absolute priority rule—and not respondents'—is the correct one. We do not believe that Congress created, in Chapter 12, an option for farm reorganizations *less* accessible to most farmers than current Chapter 11 proceedings.

## V

In sum, because we find the decision below to be contrary to the Bankruptcy Code and this Court's previous cases, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

---

[11] "Under this new chapter, it will be easier for a family farmer to confirm a plan of reorganization." Joint Explanatory Statement of the Committee of Conference, reprinted in 132 Cong. Rec. 28143, 28144 (1986).