**In re Michael Ned CHANDLER, Mary Chandler, Debtors.**

**Bankruptcy. No. 87–40427.**

United States Bankruptcy Court, D. Montana.

July 29, 1988.

Kevin Sweeney, Billings, Mont., for debtors.

Norman Newhall, Great Falls, Mont., for Security State Bank.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, pending for decision are a motion for relief from the automatic stay filed by Security State Bank (Bank) and approval of the Disclosure Statement of the Debtors. This case originally was filed under Chapter 13 and then converted to Chapter 11 on September 17, 1987, when it became apparent the debt exceeded the jurisdictional limit applicable in a Chapter 13 case. Hearing on the motion of the Bank and Disclosure Statement

was held on July 12, 1988, and memorandums by the parties have now been filed.

The Debtor's Third Amended Disclosure Statement and proposed Plan of Reorganization reveal that the Debtors have three creditors, namely:

| | | |
|---|---|---|
| Security Bank–Home Mortgage | – | $ 17,018.00 |
| Security Bank–Business Mortgage | – | 123,508.00[1] |
| Security Bank–Unsecured portion of Business Loan | – | 223,771.49 |
| Internal Revenue Service–Unsecured | – | 4,366.21 |
| Fay Chandler, insider–Unsecured | | 15,000.00 |

The Plan and Disclosure Statement propose that the Debtor continue in operation of its retail liquor and restaurant business known as the "Golden Wheel Niteclub" in Plentywood, Montana. From the operation, as shown not only by the Disclosure Statement but also the sworn testimony of the Debtor Michael Chandler taken pursuant to Bankruptcy Rule 2004, the Debtors concede the business will support monthly payments to the Bank on its secured business claim of $1,476.02, to the IRS of $154.88, to Fay Chandler of $19.82, and to the Bank on its unsecured claim of $295.71. The payments to the unsecured creditors are fixed based on 10% of each allowed claim. The Bank states that it will not vote to accept the Plan and thus the Plan seeks to invoke the "cram-down" provisions of Section 1129(b) of the Code against the dissenting class. As a result, the Bank argues that the Plan cannot be confirmed because the Plan would not satisfy the fair and equitable test to creditors under 1129(b), also known as the "absolute priority" rule. The Bank postures that the motion for relief from stay should now be granted because the Debtors' proposed Plan and Disclosure Statement clearly reveal that the Debtors cannot successfully reorganize under Chapter 11. For the purposes of this Order, I accept as findings that (1) the Bank controls the vote in the unsecured class and would vote to reject the Plan, (2) the Bank holds more than two-thirds in dollar amount in the unsecured class, and (3) the Debtors seek to continue in business rather than liquidate under 1129(a)(11) of the Code.

The starting point of this decision is the holding of *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In the *Timbers* decision, the court considered the contention of the secured creditor that undersecured creditors face unfair delay if they are denied payments of interest (lost opportunity costs) during the time the automatic stay prohibits such creditor from realizing on its security. The Court focused on § 362(d)(2) in rejecting such contention (specifically overruling *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984)). The court explained that once a lack of equity is shown to exist in a Chapter 11 case upon a motion for relief from the automatic stay, it is then incumbent upon the Debtor to establish such property is necessary for effective reorganization. The Court emphasized as follows:

"Section 362(d)(2) also belies petitioner's contention that undersecured creditors will face inordinate and extortionate delay if they are denied compensation for interest lost during the stay as part of 'adequate protection' under § 362(d)(1). Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization'. See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time'. [*In re Timbers of Inwood Forest Associates, Ltd.*] 808 F.2d [363], at 370–371, and nn. 12–13 [5th Cir.1987], and cases cited therein. The cases are numerous in which § 362(d)(2) relief has been provided within less than a year from the filing of the bankruptcy petition. And while

---

**1.** All figures and valuations of assets are taken from the Debtors' Disclosure Statement and accepted by the Bank only for the purpose of the pending matters.

the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, see 11 U.S. C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief." *Id.* 484 U.S. at pp. ——–——, 108 S.Ct. at pp. 632–633.

Of course, in line with *Timbers,* this court notes that once the exclusive filing period of 120 days has passed, as is the case here, a pronounced effort must be made by the Debtor that a realistic prospect of effective reorganization is probable. Since this court now has before it the proposed Plan, it is in a position to rule whether the Debtors have sustained their burden of proof under § 362(g)(2).

This brings us to the ending point of this decision as a result of *Norwest Bank Worthington, et al. v. Ahlers (In re Ahlers),* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In *Ahlers* the court considered the argument of the Debtors that the absolute priority rule can be satisfied under an exception pronounced in *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) by providing contributions of labor, experience and expertise, i.e., sweat equity, as money's worth to allow the Debtors to retain their equity in the business even though the unsecured creditors were not being paid in full. *Ahlers* explains:

"Even if Congress meant to retain the *Los Angeles Lumber* exception to the absolute priority rule when it codified the rule in Chapter 11—a proposition that can be debated, see n. 3, *supra*—it is clear that Congress had no intention to expand that exception any further. When considering adoption of the current Code, Congress received a proposal by the Bankruptcy Commission to modify the absolute priority rule to permit equity-holders to participate in a reorganized enterprise based on their contribution of 'continued management ... essential to the business' or other participation beyond 'money or money's worth'. See H.R.Doc. No. 93–137, pt. 1, pp. 258–259 (1973). This proposal—quite similar to the Court of Appeals' holding in this case—prompted adverse reactions from numerous sources. Congress ultimately rejected the proposed liberalization of the absolute priority rule and adopted the codification of the rule now found in 11 U.S.C. § 1129(b)(2)(B) (1982 ed. and Supp. IV). 'This [section] codifies the absolute priority rule from the dissenting class on down'. See H.R.Rep. No. 95–595, p. 413 (1977). We think the statutory language and the legislative history of § 1129(b) clearly bar any expansion of any exception to the absolute priority rule beyond that recognized in our cases at the time Congress enacted the 1978 Bankruptcy Code.

In sum, we find no support in the Code or our previous decisions for the Court of Appeals' application of the absolute priority rule in this case. We conclude that the rule applies here, and respondents' promise of future labor warrants no exception to its operation." *Id.* 485 U.S. at pp. ——–——, 108 S.Ct. at p. 968.

The Debtors' proposed Plan, and their memorandum in opposition to the Bank's motion, clearly places the Debtors in the same legal position as was the position of the family farmer in *Ahlers.* The Debtors state they intend on working themselves extra hours to make the business more profitable, and further to contribute substantial exempt wages as additional capital to fund the Plan payments. That later argument is specious, first, because it is legally unsound [2], and second, the sworn testimony of the Debtor Michael Chandler reveals he and his wife plan to continue their monthly wage of $2,000.00 to fund their living expenses. In short, like *Ahlers,* it is not necessary to decide whether in fact the *Los Angeles Lumber* exemption survived the 1978 Code, for the contribution by the Chandlers of their labor does not even come within that exception.

---

**2.** The only exemption legally allowable to the Debtor is for wages earned within 45 days of the filing of the petition. Section 25–13–614, Mont. Code Ann. (1982). At best, this would result in a $3,000.00 contribution.

"Viewed from the time of approval of the plan, respondents' promise of future success is intangible, inalienable, and, in all likelihood unenforceable. 'It has no place in the asset column of the balance sheet of the new [entity]'. *Los Angeles Lumber*, supra, at 122–123, 60 S.Ct. at 11.

"Unlike 'money or money's worth', a promise of future success cannot be exchanged in any market for something of value to the creditors *today*." *Ahlers*, at p. ——, 108 S.Ct. at p. 967. (Emphasis in original).

Thus, the Debtors have not and will not, under the Plan "that is in prospect", be able to satisfy Section 1129(b) of the Code. In sum, there is no reasonable likelihood of reorganization. The Debtors' hopes and dreams are not sufficient to carry the day that a reorganization is legally probable. Accordingly, the Bank's motion for relief from the automatic stay must be granted.

In view of this holding, I will grant to the Debtors a period of time to either convert this case to Chapter 7 or dismiss the case. Further, by reason of this holding, it is not necessary to rule on the sufficiency of the Disclosure Statement.

IT IS ORDERED:

1. The motion of Security State Bank for relief of the automatic stay under Section 362(d) of the Bankruptcy Code is granted, and the stay is hereby terminated;

2. The Debtors shall have to and including August 19, 1988, to file a motion to convert this case to Chapter 7 of the Code or dismiss this case.