In re Billy P. SHORT, SSN 441–38–7901, Norma L. Short, SSN 446–36–9186, Debtors.

Bankruptcy No. 93–71174.

United States Bankruptcy Court, E.D. Oklahoma.

Oct. 26, 1994.

Thomas B. Webb, McAlester, OK, for debtors.

Dominic Sokolosky, Tulsa, OK, for Farm Credit Bank of Wichita.

Givens L. Adams, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, OK.

### ORDER

TOM R. CORNISH, Bankruptcy Judge.

On the 3rd day of August, 1994, the First Amended Chapter 11 Plan; Objection by Farm Credit Bank; Objection by Oklahoma Tax Commission; Motion for Modification of Automatic Stay and Abandonment of Property by Farm Credit Bank; and Objection by Debtors came on for an evidentiary hearing before this Court. Counsel appearing in person were Thomas B. Webb for the Debtors; Dominic Sokolosky for Farm Credit Bank; and Givens Adams for the Oklahoma Tax Commission.

After the hearing on the matter, the parties were given until August 18, 1994 in which to file proposed findings and conclusions. Farm Credit Bank filed a Post–Trial Memorandum in Support of its Objection to Confirmation of the Plan and Proposed Findings of Fact and Conclusions of Law. In addition, the Debtors filed a supplemental pleading in support of confirmation of their Plan.

After review of the above-referenced pleadings and hearing arguments of counsel, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P., in this core proceeding:

### FINDINGS OF FACT

1. The Debtors filed this bankruptcy under Chapter 11 of the United States Bankruptcy Code on September 28, 1993.

2. The Debtors operate a cattle-on-gain operation. Although the Debtors do not own any cattle; however, they have an agreement with Bill Goodwin, a friend and business associate, wherein Mr. Goodwin places cattle on Debtors' land to graze. Mr. Goodwin testified that he has had cattle on the Debtors' land continuously since 1991. He has no plan of removing his cattle from grazing on the Debtors' property. It was submitted to the Court that Mr. Goodwin was an expert in livestock and on cattle-on-gain operations.

3. The Shorts also own a family restaurant in Ardmore. Mrs. Short testified that she has projected $50,000 income from the restaurant. Mrs. Short further testified that a majority of their business traffic came from "regular customers" and the restaurant has ten (10) employees.

4. The Debtors propose to produce $110,-284 from their farm operation. The Debtors have realized approximately this same income stream for 1988, 1989 and 1991. The Trustee, Robert Hemphill, testified that the Plan is feasible. Mark Gregory from the Oklahoma State University Extension Office in Ada testified the Debtors' land is good and is able to generate the figures projected by the Debtors.

5. On October 1, 1994, the Debtors propose to put approximately $70,000 into their farm operation. Mr. Goodwin testified that he owes the Debtors approximately $70,000 which will be "settled up" prior to October 1, 1994. Mr. Goodwin testified that he isn't exactly sure how much he owes the Debtors; however, it is approximately $74,000 less any advances he has made. Mr. Goodwin testi-

fied that he does not know what, if any, advances have been made.

6. Farm Credit Bank objects to the confirmation of this Plan because the Plan is not feasible and because it violates the absolute priority rule.

7. The Oklahoma Tax Commission objected to the confirmation of this Plan; however, in the Debtors' supplemental filing, this Court has been informed that the Oklahoma Tax Commission has withdrawn its objection to confirmation since the Debtors are current on their sales taxes. The only issues remaining before this Court is whether the Plan violates the absolute priority rule and whether the Plan is feasible.

### CONCLUSIONS OF LAW

A. 11 U.S.C. § 1129(a)(8) provides that each creditor must either accept the Plan or not be impaired under the Plan. However, notwithstanding § 1129(a)(8), the Court may confirm the Plan, over the objection by creditors, if all other provisions of § 1129(a) are met, and the Court determines that the Plan does not discriminate unfairly and is fair and equitable, with respect to each class of claims or interest that is impaired under the Plan. 11 U.S.C. § 1129(b)(1). The requirements for "fair and equitable" treatment for unsecured creditors is set forth in § 1129(b)(2).

The Plan may be confirmed only if:

(i) the plan provides that each holder of a claim or of such a class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B).

B. The United States Supreme Court in *Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)* was faced with a similar situation. The Debtors in *Ahlers* operated a family farm and had obtained loans from Norwest which were secured by the Debtors' farmland, machinery, crops, livestock and farm proceeds.

The Supreme Court noted that the absolute priority rule provides that the same class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan. Under current law, no Chapter 11 plan may be confirmed over the creditor's legitimate objections if it fails to comply with the absolute priority rule. *Id. 485 U.S. at 200, 108 S.Ct. at 966.* The Supreme Court found:

Even where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains "property." Whether the value is "present or prospective, for dividends or only for purposes of control," a retained equity interest is a property interest to "which the creditors [are] entitled ... before the stockholders [can] retain it for any purpose whatever.

*Id. at 206, 108 S.Ct. at 969 (quoting Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 508, 33 S.Ct. 554, 561, 57 L.Ed. 931 (1933)).* Explaining the meaning of "property," the Supreme Court noted that even in sole proprietorships, where the going concern value may be minimal, there may still be some value in the control of the enterprise and the potential for future profits of an insolvent business. *Id.*

C. The Tenth Circuit in *Unruh v. Rushville State Bank of Rushville, Missouri, 987 F.2d 1506 (10th Cir.1993),* was faced with the issue of whether, under § 1129(b)(2)(B)(ii), the debtors have an interest in their bankruptcy estate on account of which they are receiving or retaining property. The debtors contended they did not have an "interest" on account they have received "property" within the meaning of the absolute priority rule. The Tenth Circuit noted that the Court must first consider what Congress meant by "interest" and "property." The Tenth Circuit looked to *O'Conner v. United States Dep't of Energy, 942 F.2d 771 (10th Cir.1991).* The Tenth Circuit found that the absolute priority rule in that case was unambiguous, wherein it prohibits a junior interest or claim holder from retaining or receiving property on account of that interest or claim when a dissenting class of unsecured creditors is not paid in full. The Court found that "[b]ecause

appellants [debtors] have a right to the future profits of their farms regardless of insolvency at the time of the petition, we think that appellants clearly have interest in their estates in the form of equitable ownership interests." *Id. at 1508.* The Tenth Circuit relied on the *Ahlers* decision and found that the debtors retained control of their farms and the rights to future profits.

The Tenth Circuit in *Unruh* held that the *Unruh* case did not require the Court to reach the issue of whether a new value exception to the absolute priority rule continued to exist. *Id. at 1510.*

In the instant case, the Debtors propose to pay fifty-two percent (52%) to their unsecured creditors. Farm Credit Bank objects to the confirmation of this Plan because the Debtors retain their interest in the enterprise, while they will only receive fifty-two percent (52%) on their unsecured debt. The Debtors argue that they are placing new capital of $70,000 into the enterprise and thus, they have satisfied the new value exception to the absolute priority rule. The Tenth Circuit has still not decided whether a new value exception to the absolute priority rule exists.

D. The Debtors attempt to utilize the "new value exception" to the absolute priority rule to have the Court confirm their Chapter 11 Plan. The United States Supreme Court in *Ahlers* reserved its ruling on whether the new value exception as set forth in *Los Angeles Lumber* survived the enactment of the Bankruptcy Code. *Id. 485 U.S. at 203, 108 S.Ct. at 967 n. 3.* The Tenth Circuit likewise has deferred ruling on whether a new value exception to the absolute priority rule continued to exist. *Unruh at 1510.*

■ The other issue before the Court is whether a new value exception to the absolute priority rule survived the enactment of the Bankruptcy Code. Most courts that have been faced with this issue have found that the "new value exception" continues to be valid since the passage of the Bankruptcy Code. *In re Bonner Mall, 2 F.3d 899 (9th Cir.1993), cert. granted, —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 648 (1994); In re Dean, 166 B.R. 949, 955 (Bankr.D.N.M. 1994); In re Wynnefield Manor Assoc., 163*

*B.R. 53, 55–56 (Bankr.E.D.Pa.1993); In re Union Partners Ltd., 165 B.R. 553, 570 (Bankr.E.D.Pa.1994); In re BMW Group I, Ltd., 168 B.R. 731, 759 n. 69 (Bankr. W.D.Okla.1994).* This Court concludes that a new value exception still remains.

■ E. To qualify for the new value exception, the previous equity holders must offer value that is:

(1) new;

(2) substantial; and

(3) money or money's worth.

*Case v. Los Angeles Lumber, 308 U.S. 106, 121–22, 60 S.Ct. 1, 10–11, 84 L.Ed. 110 (1939).* If the Debtors' Plan cannot satisfy all of the requirements of the new value exception, the Plan cannot be confirmed as a matter of law. *Bonner Mall, 2 F.3d at 917.* The infusion of new capital by pre-petition owners in exchange for equity interests in the reorganized debtor does not violate the absolute priority rule because the previous owners are not receiving their equity interest on account of their previous ownership but rather on account of their "new value" contributed. *In re Dean at 955.*

■ The pivotal question before this Court is whether the value is "new." The Debtors propose to place approximately $70,000 received from Mr. Goodwin for grazing in 1992–93 into the estate. Property of the estate is defined in pertinent part as:

[p]roceeds, product, offspring, rents, and or profits from property of the estate ...

11 U.S.C. § 541(a)(6). Proceeds is a broad term intended to encompass all proceeds of property of the estate. Legislative comment to § 541(a).

In the instant case, the land used for grazing in the Debtors' farming operation became property of the estate upon the filing of bankruptcy. Thus, the proceeds derived from using the land are likewise property of the estate. The payment from Mr. Goodwin, as property of the estate, does not constitute new value as an exception to the absolute priority rule. Because the Debtors' Plan does not comply with the absolute priority rule, the Court does not need to address the other objections. Therefore, the confirma-

tion of the Debtors' First Amended Chapter 11 Plan must be denied.

IT IS THEREFORE ORDERED that the confirmation of the Debtors' Chapter 11 Plan is **denied.** The Debtors may file a Second amended Plan within thirty (30) days of this Order. The Motion for Modification of Stay filed by Farm Credit Bank is **denied** without prejudice to refiling if Debtors file a Second Amended Plan.