

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-16-2007

# In Re: WebSci Tech

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2226

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: WebSci Tech " (2007). *2007 Decisions.* Paper 1099.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1099

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2226

IN RE: WEBSCI TECHNOLOGIES, INC.,
Debtor

Ramkrishna S. Tare,
Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action Nos. 03-cv-05444,
04-cv-03657, 04-cv-03658 & 04-cv-03659
(Honorable William H. Walls)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 11, 2007
Before: SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges.

(Filed: May 16, 2007)

OPINION OF THE COURT

PER CURIAM.

Ramkrishna Tare, the former president, chief executive officer and sole

shareholder of WebSci Technologies, Inc. ("WebSci"), appeals from the District Court's

orders denying his motions to supplement the record and for reconsideration of the denial,

and affirming the Bankruptcy Court's approval of a settlement between the WebSci estate

and Fleet National Bank ("Fleet"), confirmation of Fleet's proposed liquidation plan and related matters. For the reasons that follow, we will affirm.

This case involves Chapter 11 Bankruptcy proceedings voluntarily initiated by WebSci. In September 2000, WebSci obtained a $5 million line of credit from Fleet's predecessor-in-interest, Summit Bank. According to Fleet, by early 2001, the credit line was drawn down and the loan was in default. In October of that year, Fleet initiated an action against both WebSci and Tare in the Superior Court of New Jersey, seeking judgment for the unpaid principal and interest, enforcement of Fleet's security interest, and appointment of a receiver. The Superior Court entered partial summary judgment in favor of Fleet and set a hearing for Monday, July 29, 2002 to determine the amount due. See Docket No. C-228-01 (N.J. Super. Ct. Ch. Div.). On Friday, July 26, 2002, WebSci filed a Chapter 11 bankruptcy petition and also initiated an action in the United States District Court for the District of New Jersey against Fleet's corporate parent, FleetBoston Financial Corp ("FleetBoston"). See Civ. No. 02-cv-03598 (D.N.J.). On November 13, 2002, Tare personally filed a pro se complaint against FleetBoston and individual members of the Board of Directors. See Civ. No. 02-cv-05459 (D.N.J.). The actions, which alleged that FleetBoston committed various antitrust, RICO, and related violations in connection with the loan, were consolidated and administratively dismissed pending completion of the bankruptcy proceedings and related appeals.

On July 28, 2003, the Trustee for the WebSci estate filed a motion for court approval of a settlement between WebSci and Fleet pursuant to Rule 9019 of the Federal

2

Rules of Bankruptcy Procedure. The settlement provided carve-outs from Fleet's cash collateral for partial payment of the WebSci estate's unsecured creditors and full payment of all professional and administrative fees approved by the Bankruptcy Court. In exchange, the settlement allowed Fleet's proof of claim in the amount of $5,908,144.54 and provided Fleet with a release and assignment of all claims that WebSci had asserted or could have asserted against it, with the exception of those claims which had already been asserted in the District Court action, and those claims vested in Tare personally. In support of the motion, the Trustee filed a detailed certification describing his business decision to settle the claims. Following the Bankruptcy Court's August 25, 2003 hearing, the Trustee filed a supplemental certification clarifying which claims were included in the settlement and which were not. The hearing was continued on September 26, 2003, at which time the Bankruptcy Court heard further argument from all parties and issued an oral decision approving the settlement.

On September 19, 2003, Fleet filed its Plan of Liquidation ("Liquidation Plan") and Disclosure Statement. The Disclosure Statement fully described the nature of Tare's alleged claims and defenses, informed creditors of the status of the parties' disputes, and explained how the WebSci estate would be administered. An Amended Disclosure Statement was filed on November 5, 2003, and approved by a Bankruptcy Court order dated December 12, 2003. Tare then filed a motion to reconsider the approval of the Disclosure Statement, which the Bankruptcy Court denied.

Fleet followed the filing of its Liquidation Plan with a January 27, 2004 memorandum of law setting forth the reasons why the plan should be confirmed pursuant to 11 U.S.C. §§ 1123 and 1129. On February 26, 2004 and March 22, 2004, the Bankruptcy Court conducted a confirmation hearing on the Liquidation Plan. During the course of the proceedings, Tare moved to strike the evaluation of Precision E-Consulting, which had been retained to secure and preserve the software on WebSci's computers, regarding the market value of the software. He also sought to strike the testimony of the Trustee, accusing him of having committed perjury and misconduct in his testimony and seeking sanctions against him. On April 12, 2004, the Bankruptcy Court confirmed the Liquidation Plan from the bench and, two weeks later, denied Tare's motions to strike and for sanctions. The order of confirmation was entered on May 18, 2004.

Tare appealed to the District Court, raising concerns regarding the settlement, the Liquidation Plan and the Disclosure Statement, among other things. The District Court held a hearing on December 19, 2005 and affirmed the rulings of the Bankruptcy Court in an oral opinion on December 20, 2005, followed by a written order dated December 21, 2005. Tare then filed a motion for reconsideration, which was denied on March 31, 2006. Tare now appeals.

The District Court had appellate jurisdiction under 28 U.S.C. § 158(a) and we have jurisdiction under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. "Exercising the same standard of review as the district court, [w]e review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion

4

for abuse thereof." Reconstituted Comm. of Unsecured Creditors of the United

Healthcare Sys., Inc., v. State of N.J. Dept. of Labor (In re United Healthcare Sys., Inc.),

396 F.3d 247, 249 (3d Cir. 2005) (internal quotation marks and citations omitted).

Tare first challenges the District Court's order affirming the Bankruptcy Court's

approval of a Rule 9019 settlement between Fleet and the WebSci estate, arguing that the

settlement impermissibly pre-approved a plan of liquidation and rendered the rest of the

bankruptcy proceedings irrelevant by transferring to Fleet all of WebSci's claims and

rights. He further claims that the factors articulated in Myers v. Martin (In re Martin), 91

F.3d 389 (3d Cir. 1996), are not applicable because the settlement falls outside the scope

of Rule 9019, but that if they are applicable, the settlement does not satisfy the Martin

factors due to the transfer of all claims and rights of the estate for no consideration.

We disagree. The settlement plainly falls within the purview of Federal Rule of

Bankruptcy Procedure 9019(a), which provides: "On motion by the trustee and after

notice and a hearing, the court may approve a compromise or settlement. Notice shall be

given to creditors, the United States trustee, the debtor, and indenture trustees as provided

in Rule 2002 and to any other entity as the court may direct."

The Bankruptcy Court summarized the settlement as follows:

> The Trustee in the terms of the settlement stated that he had entered
> into the agreement with the bank whereby the debtor's alleged setoffs and
> counterclaims – that is WebSci, the debtor, alleged setoff and counterclaims
> would be settled by, among other things, the bank funding a plan of orderly
> liquidation and that the bank had agreed to provide sufficient funds to
> satisfy all allowed administrative obligations, all allowed priority claims, if
> any, and a dividend to unsecured creditors in an amount up to 50 percent of

the total of allowed claims which would be computed at 25 percent of allowed claims payable from the proceeds, if any, of disposition of WebSci's interest in Ensiva software, and other intellectual property, and 25 percent, but in no event to exceed the sum of $50,000 of the total of allowed claims payable from the remainder of the liquidation of WebSci's assets.

In reviewing the terms of the settlement, the Bankruptcy Court deferred to the Trustee's conclusion that, even if WebSci's state court claims had merit, the quantum of damages they would garner would at no time exceed the principal amount due to Fleet, which at that time was in excess of $5 million. The Court concluded that the Trustee had properly exercised his business judgment in concluding that the settlement would be in the best interest of the estate in light of his conclusions that the litigation claims would require a substantial investment of time and energy by the Trustee, that the estate did not have sufficient funds to support the litigation, and that without the settlement, it is unlikely the creditors would receive any dividend, or at last not as much as they would receive with the settlement.

This Court has endorsed the use of settlement in administering a bankruptcy estate, noting that "it is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party." In re Martin, 91 F.3d at 393. We review the Bankruptcy Court's approval of a settlement for abuse of discretion, considering whether and how the Bankruptcy Court balanced four criteria: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also In

6

re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006). The Bankruptcy Court plainly considered all of these factors in reaching its decision, and concluded that settlement of the estate's claims against Fleet was in the best interests of the estate. We cannot conclude that this was an abuse of its discretion.

Tare next argues that the Bankruptcy Court erred in concluding that the Trustee had not violated its order permitting the Trustee to retain Precision E-Consulting ("Precision") only for the purpose of securing WebSci's intellectual property and not for the purpose of providing an expert opinion on its value and/or marketability. Tare relies heavily on the fact that at the January 27, 2004 hearing on the Trustee's motion to retain Precision, the Bankruptcy Court stated: "what's before the Court is the request to secure and preserve all proprietary information, intellectual property maintained on the computer system prior to the auction sale. . . . not valuation or assessing marketability and not marketing the intellectual property except by further application . . . ." A reading of the entire transcript, however, reveals that the Bankruptcy Court was concerned with issues of compensation for services rendered by Precision and not with its qualifications to perform services outside of the scope of the Court's order. We agree with the Bankruptcy Court that this is not a ground for striking the report from being introduced into evidence, but rather, if anything, might be relevant to the ability of Precision to be compensated for those services which exceeded the scope of the order.

Tare's next argument is related to the cancellation of his WebSci shares. In the context of his Chapter 7 personal bankruptcy proceedings, the Bankruptcy Court entered

7

an order approving the abandonment by the Trustee of his interest in 100% of the WebSci capital stock, despite an offer by Fleet to pay $25,000 to Tare's estate in exchange for those shares.  In its Liquidation Plan in WebSci's Chapter 11 proceedings, Fleet proposed that Tare, as the sole WebSci equity holder, would receive no distribution under the Plan, and that all outstanding capital stock of WebSci would be extinguished and deemed cancelled.  Tare argued to the Bankruptcy Court, and argues again on appeal, that the Court's order in his Chapter 7 proceedings should have precluded the cancellation of his shares in the context of the Chapter 11 proceedings under the principles of res judicata.

In reviewing Fleet's proposed liquidation plan, the Bankruptcy Court noted that while extinguishment of capital stock is not required as a part of a liquidation plan, it is permitted so long as it is deemed to be fair and equitable and proposed in good faith.  See 11 U.S.C. §§ 1129(a)(3), (b)(2).  After considering Tare's objections, the Court held that the cancellation of WebSci's shares under the plan was appropriate in light of the absolute priority rule, that it did not contravene the plain language of the Rule 9019 settlement, that it was proposed in good faith, and that it was not barred by the Court's prior order in Tare's Chapter 7 proceedings.  We agree with the Bankruptcy Court's analysis, particularly in light of the absolute priority rule, which requires that senior classes receive full compensation for their claims before other classes can participate.  Because Tare, as a shareholder, would have been junior to all other claimants, he could not have retained the stock or any rights arising from its ownership.  See 11 U.S.C. § 1129(b)(2)(B)(ii); Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988); In re Resorts Int'l, 145

8

B.R. 412, 483 (Bankr. D.N.J. 1990) (explaining that implicit in the absolute priority rule is that stockholders cannot participate in a reorganization plan unless it is established that the debtor is insolvent).

Next Tare alleges that the Bankruptcy Court relied on an erroneous liquidation analysis in determining the value of the estate; specifically, in not including his legal claims against Fleet as assets of the estate, and in assigning no value to WebSci's intellectual property or its overseas offices. First Tare claims that "it is undisputed that [the Trustee] had valued just the claims against Fleet to have a value of up to the claims asserted by Fleet against the estate (approx. $5 Million)." This statement misrepresents the Trustee's testimony, which was that he did not believe that the estate recovery would exceed its debt of over $5 million to Fleet. In any event, this testimony was in reference to those claims which were settled pursuant to the Rule 9019 settlement, and accordingly, would not come into play in the liquidation analysis.

With respect to the valuation of the intellectual property, the Bankruptcy Court relied on the expert report of Precision E-Consulting, which Tare cites favorably in his brief. According to the report, WebSci's product would require a significant investment of time and money (between $1-2 million) to make it marketable and would require "at least twice as much to take the product to market." Because neither Tare nor the Trustee had been able to find a buyer for the software, and because it could not be marketed in its current state, the Liquidation Plan assigned no value to the software. With respect to the value of the overseas offices, the Bankruptcy Court found that because no documentation

9

or verification of the existence or contents of these offices had been presented to the Court, it was appropriate for Fleet not to assign a monetary value to these offices. Based on the evidence presented to the Bankruptcy Court, we cannot conclude that its findings were clearly erroneous, nor can we overturn its valuation of the estate.

In addition to his appeal of the Bankruptcy Court's rulings, Tare also challenges the District Court's denial of his motions to supplement the record and for reconsideration of the denial. In September 2005, nine months after briefing in the appeal closed, Tare filed a motion in the District Court to supplement the record on appeal, making various allegations of fraud and concealment regarding the former Chapter 7 Trustee appointed in Tare's personal bankruptcy case, the Chapter 11 Trustee appointed in WebSci's bankruptcy case, and the Chapter 11 Trustee's attorney. The District Court held that it could not consider new evidence that was not part of the factual record before the Bankruptcy Court. See Fed. R. Bankr. P. 8006 ("The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court."). The Court further held that, because Appellant was unable to demonstrate that the evidence he sought to supplement the record with could not have been discovered during the bankruptcy proceedings, it could not grant his motion to supplement the record. See Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) (applying "newly discovered evidence" standard of Rule 60(b)(2)).

Tare alleges that the District Court erred in ignoring the conflicts raised in his motion to supplement the record and in holding that Tare had not exercised due diligence in discovering the conflicts. For the latter point, he relies on Burtch v. Gantz (In re Mushroom Transp. Co.), 382 F.3d 325 (3d Cir. 2004), for the proposition that he could not have been expected to discover these conflicts given their fraudulent concealment by fiduciaries. He further argues that, in reviewing his motion for reconsideration, the District Court for the first time considered the merits of all of the concealed conflicts without separating the newly discovered conflicts from those presented earlier. Neither of these arguments is availing. Our decision in Mushroom relied in part on the fact that the lawyer-client relationship "entails such a presumptive level of trust in the fiduciary by the principal that it may take a 'smoking gun' to excite searching inquiry on the principal's part into its fiduciary's behavior." 382 F.3d at 343. The record amply reflects that no such relationship existed between Tare and the Trustee. Furthermore, Tare avers that he discovered the alleged conflicts by reviewing publicly available dockets and court filings. There is no reason these conflicts could not have been discovered during the pendency of the Bankruptcy Court proceedings. See Bohus, 950 F.2d at 930. With respect to his criticism of the District Court's analysis of his claims of conflict, the District Court clearly concluded that, with respect to those conflicts, which were presented to the Bankruptcy Court, Tare had not demonstrated that they were conflicts barred under the Bankruptcy Rules, and with respect to those that were not raised in the

11

Bankruptcy Court, Tare could not raise them for the first time on appeal.  We find no error in the District Court's treatment of these claims.[1]

Having considered all of the arguments raised by Tare in his lengthy appeal and reply briefs, we conclude that neither the Bankruptcy Court nor the District Court erred, and accordingly, we will affirm.

---

[1]We note that Tare previously sought removal of the Chapter 11 Trustee, alleging that he suffered from various actual and potential conflicts of interest.  We affirmed the District Court's affirmance of the Bankruptcy Court's denial of Tare's motion on November 18, 2003.  See C.A. No. 03-1887 (3d Cir. 2003).