**In the Matter of Pat YASPARRO, a/k/a P.T. Yasparro and a/k/a Pasquale T. Yasparro, Debtor.**

**Bankruptcy No. 87–343–8B1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 4, 1989.

See also, Bkrtcy., 76 B.R. 207.

Bernard J. Morse, for debtor.

Patti Medearis, for Great Western Bank.

Dennis I. Moore, U.S. Atty.

Robert Eddy, for NCNB.

Larry Foyle, for Barnett Bank of Pasco.

Daniel Rock, for Baillie Roofing Inc.

Cynthia Burness, U.S. Trustee.

Aaron Gold, for Ravel Jewelry, Inc.

## ORDER ON CONFIRMATION AND DEBTOR'S MOTION FOR CRAMDOWN

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THIS CAUSE came on for consideration of confirmation of the Debtor's Amended Chapter 11 Plan and the Debtor's Motion for Cramdown. Objections were filed by unsecured creditors, Barnett Bank of Pasco County and Baillie Roofing, Inc. The Court, after hearing testimony, argument of counsel, and having considered the record, finds the relevant facts to be as follows:

The Debtor, Pat Yasparro, is the former president of Gold Center, Inc. A number of corporate debts incurred during 1985 and 1986 were guaranteed by him individually. In April, 1986, the corporation filed a Petition under Chapter 11 of the Bankruptcy Code. The corporate case was later converted to a Chapter 7. The Debtor remained primarily liable on the corporate debts by his personal guarantees. On January 23, 1987, the Debtor, individually, filed a Petition for Relief under Chapter 11 of the Bankruptcy Code.

The Debtor's original Plan of Reorganization provided for funding through the sale of certain assets, the compromise or extension of certain classes of claims, and the application of profits derived from the chartering of the vessel "Therapy." On February 1, 1988, the Debtor filed his Amended Plan of Reorganization which provided for funding through the Debtor's future income as chief executive officer of a corporate jewelry distributor. The Amended Plan called for the issuance of promissory notes in the amount of 10% of the allowed unsecured claims, payable in ten equal annual installments to Class 8 creditors.

After failing to receive the necessary vote of the impaired Class 8 unsecured creditors, the Debtor filed a Motion for Cramdown. At the confirmation hearing the Debtor announced certain modifications to the Amended Plan which were incorporated in the First Amendment to the Amended Plan of Reorganization filed on September 9, 1988. The treatment of the class of unsecured claims was modified to include interest on the promissory notes at 10% per annum.

The Plan provides the Debtor shall retain his assets, both exempt and non-exempt. The Debtor's Schedules reveal assets totalling $339,231.42. The assets include two parcels of real property held as tenants by the entirety, stock in Florida West Jewelers, Inc. with an undetermined market value, two automobiles, and a boat. The Debtor has claimed as exempt his Florida homestead and personal possessions to the extent of $1,000.00. The Plan would be funded by the salary the Debtor receives from Florida West Jewelers, Inc.

### BEST INTEREST OF CREDITORS VS. CRAMDOWN

Section 1129(a) of the Bankruptcy Code sets forth the conditions for plan confirmation. The conditions are mandatory with the exception of Section 1129(a)(8) which requires acceptance of the plan by the impaired classes. If an impaired class rejects the plan, the debtor may nonetheless have the plan confirmed by utilizing the cramdown provisions of Section 1129(b).

The Bankruptcy Code makes no distinction between cramdown by a corporate debtor and cramdown by an individual debtor. An individual may be a debtor under Chapter 11. 11 U.S.C. § 109(d). No where in the provisions of Section 1129 has Congress expressly excluded, limited, or excepted individual Chapter 11 debtors from availing themselves of that subsection. Thus, if an individual meets the requirements of Section 1129(b), cramdown is an available alternative for confirmation.

Section 1129(b)(1) provides that despite the failure to meet the requirement of Section 1129(a)(8), the plan shall be confirmed if it does not "discriminate unfairly, and is fair and equitable" with respect to the impaired classes that have rejected the plan. Section 1129(b)(2) sets forth nonexclusive requirements [1] for meeting the "fair and equitable" standard. It provides,

> (2) ...the condition that a plan be fair and equitable ...includes the following requirements: ...
>
> (B) With respect to a class of unsecured claims—
>
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior [2] to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

Debtor's counsel argues "the best interest of the creditors" test should be used as the criteria under Section 1129(b)(2)(B)(i). Debtor's liquidation analysis reflects unsecured claims in excess of $326,634.35; and assets, including the exempt assets, having a market value of $203,750.00. The liquidation value, excluding the exempt assets, is projected to be $7,500.00. Under the plan, the class of unsecured creditors would be paid approximately $32,000.00 over 10 years with 10% interest. Assuming these figures are correct, the unsecured creditors will receive under the plan a value greater than the $7,500.00 equity in non-exempt assets which would be available in a Chapter 7 case.

There is no dispute the Debtor's plan meets the best interest of the creditors test. That test, however, is not relevant to the "fair and equitable" requirement under Section 1129(b)(2)(B). In *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), Justice Douglas discussed this issue with respect to predecessor law in Section 77B of the Bankruptcy Act of 1898:

> To hold that in a § 77B reorganization creditors of a hopelessly insolvent debtor may be forced to share the already insufficient assets with stockholders because apart from rehabilitation under that section they would suffer a worse fate, would disregard the standards of fair and equitable; and would result in impairment of the Act to the extent that it restored some of the conditions which the Congress sought to ameliorate by that remedial legislation.

308 U.S. at 124, 60 S.Ct. at 12, 84 L.Ed. at 124. The requirements of Section 1129(b)(2)(B) are quite specific. While the expressed conditions of "fair and equitable" are not exhaustive, this Court finds no authority to bolster the Debtor's argument that by meeting the best interest of the creditors test, the requirements of cramdown are also met. In fact, the best interest of the creditors test arises as a separate criteria to confirmation under Section 1129(a)(7) and is separate and distinct from the requirements of Section 1129(b). *In re Sawmill Hydraulics, Inc.*, 72 B.R. 454, 456 (Bankr.C.D.Ill.1987).

## ABSOLUTE PRIORITY RULE

The "fair and equitable" requirement under Section 1129(b)(2)(B) includes the absolute priority rule.

---

1. See *In re Henke*, 90 B.R. 451 (Bankr.Mont. 1988).

2. Ownership interests are junior to all creditors' claims including unsecured claims. *In re Landau Boat Co.*, 8 B.R. 436, 438 (Bankr.W.D.Mo. 1981).

The absolute priority rule, in its simplest terms, requires that creditors of a debtor in bankruptcy reorganization receive payment of their claims in their established order of priority, and that they receive payment in full before lesser interests—such as those of equity holders—may share in the assets of the reorganized entity.

Powlen and Wuhrman, *The New Value Exception to the Absolute Priority Rule: Is Ahlers the Beginning of the End?*, 93 Com.L.J. 303, No. 3 (Fall 1988); *See, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, ——, 108 S.Ct. 963, 969, 99 L.Ed.2d 169, 181 (1988). In this case, the Debtor does not propose to pay the unsecured creditors the full amount of their allowed claims. At the same time, he proposes to retain his assets, both exempt and non-exempt. The Debtor's plan unquestionably does not meet the absolute priority rule.

■ All of the Debtor's assets constitute "property." Section 1129(b)(2)(B)(ii) specifically provides to meet the absolute priority rule the Debtor may not retain "any property" if the unsecured creditors are not to be paid in full. The Code section makes no distinction between exempt and non-exempt property nor as to value. Since Congress saw fit to narrow the scope of the term "property" for purposes of other sections [3], Congress could have narrowed the scope of the term "property" for purposes of Section 1129(b). Since it did not, this Court concludes the term "property" is all encompassing and is not limited by 11 U.S.C. § 541. The United States Supreme Court in interpreting Section 1129(b) has broadly construed the term. *Ahlers*, 485 U.S. at ——, 108 S.Ct. at 969, 99 L.Ed.2d at 180; *see also, In re Stegall*, 85 B.R. 510 (C.D.Ill. 1987), *aff'd* 18 B.C.D. 1237, 865 F.2d 140 (7th Cir.1989); *In re East*, 57 B.R. 14 (Bankr.M.D.La.1985); *In re Pecht*, 53 B.R. 768 (Bankr.E.D.Va.1985). Thus, the retention of "any property" includes the Debtor's two parcels of real property held as tenants by the entirety, the stock, the two automobiles and the boat.

The Debtor argues the minimal liquidation value of his assets equates to a lack of retention of "any property." The United States Supreme Court, with other courts concurring, has rejected the "no value theory." *Ahlers*, 485 U.S. at ——, 108 S.Ct. at 969, 99 L.Ed.2d at 180. (The absolute priority rule's prohibition against retaining property makes the value of the property irrelevant. As discussed subsequently, this analysis should not be confused with the exception to the absolute priority rule where the value of the property to be retained is relevant to whether the capital contribution is adequate. *Ahlers*, 485 U.S. at ——, 108 S.Ct. at 970, 99 L.Ed.2d at 181). Second, it is illogical to believe a debtor would retain property where he could not perceive value. Rather than meet the plan's objectives, he would give up his valueless property and discharge his debts under Chapter 7. *East* at 18. Third, the Congressional intent regarding Chapter 11 relief does not necessarily reveal an intent that cramdown be less restrictive for individuals than for corporations. *Id.*

The broad sweep of the term "any property" may be felt to be harsher on the individual than on the corporate Chapter 11 debtor. *See, Stegall*, 85 B.R. at 512. The bankruptcy court in *In re East, supra*, succinctly described the dilemma of individual Chapter 11 debtors seeking to avail themselves of the cramdown provisions of Section 1129(b).

> Individuals who file Chapter 11 cases must necessarily retain a residual interest in their economic future since there is no effective way to alienate all future accessions to their net worth; therefore, counsel would contend, if this Court is correct that such retention is within the meaning of "property" not allowed to be retained under § 1129(b)(2)(B)(ii), then that subsection must be unavailable to individuals.

*East* at 15, n. 1.[4] The Court concluded, "In summary, the jurisprudence apparently

---

3. See 11 U.S.C. §§ 541, 1207, 1306.

4. *See also, In re Big Dry Angus Ranch, Inc.,* 69 B.R. 695, 698 n. 3 (Bankr.Mont.1987).

unanimously holds that if the Debtor retains any property, even control or the potential for future earnings, the cramdown provisions of Section 1129(b)(2)(B)(ii) are not met." *East* at 17. This does not mean, however, that Subsection 1129(b)(2)(B)(ii) is wholly unavailable to individual debtors. There is an exception to the absolute priority rule.

## EXCEPTION TO THE ABSOLUTE PRIORITY RULE

The "infusion of new capital" exception has evolved, allowing the retention of an equity interest or property in the debtor although the objecting impaired creditors will not be paid in full. The exception had its inception under the Bankruptcy Act of 1898 in *Case v. Los Angeles Lumber Products Co., supra.* The Court stated,

> ...[W]e believe that to accord 'the creditor his full right of priority against the corporate assets' where the debtor is insolvent, the stockholder's participation must be based on a contribution in money or in money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholder.

*Id.,* 308 U.S. at 122, 60 S.Ct. at 11, 84 L.Ed. at 123.

While the "infusion of new capital" exception was espoused by the United States Supreme Court in dicta, the exception has been relied upon in the past and continues to be followed by bankruptcy courts deciding this issue under the Bankruptcy Code. *In re AG Consultants Grain Div., Inc.,* 77 B.R. 665 (Bankr.N.D.Ind.1987). Strong policy reasons for following the exception have been voiced: "...[T]he infusion of new capital in a reorganized entity to keep the enterprise alive is a desireable, and compatible, approach to a Chapter 11 reorganization effort." *In re Henke,* 90 B.R. 451, 455 (Bankr.Mont.1988) The purpose of the exception is an effort to continue the working of and generating income from the operation in order to pay all the outstanding claims of the debtors. However, the Court's reasonable concern is the security of the creditors in the event such a continued effort to operate fails. *Stegall,* 85 B.R. at 515.

■ The exception has been utilized for all forms of debtor entities. It is widely recognized where a debtor corporation proposes to pay nothing to the class of unsecured claimants, a stockholder may retain his equity interest in the corporation by contributing new capital to the reorganized debtor. *Los Angeles Lumber, supra.* Similarly, a limited or general partner of a partnership may retain his equity interest in the partnership by contributing new capital to the reorganized debtor. *Pecht,* 53 B.R. at 771, *citing, In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 832 (Bankr.S.D.N.Y.1982). Although it is difficult to perceive how an individual Chapter 11 debtor would meet the requirements of the "infusion of new capital" exception, this Court can find no reason why the exception should not extend to an individual Chapter 11 debtor [5]. In this case, the Debtor, an individual, proposes to contribute "money's worth" in the form of promissory notes to the unsecured creditors. The gravamen of the matter before this Court is whether the delivery of these promissory notes falls within the "infusion of new capital" exception to the absolute priority rule.

■ Since the *Los Angeles Lumber* case, various debtors have proposed different forms of capital contributions for purposes of falling under the absolute priority rule exception. These attempts have afforded courts the opportunity to interpret and define the scope of the term "money's worth." Determining the sufficiency of the promissory notes offered as a contribution by the Debtor in the case at hand requires a review of these boundaries.

The United States Supreme Court deci-

---

**5.** It should be noted a review of the case law indicates the rarity of confirmed individual Chapter 11 plans via cramdown. *See, In re Henke, supra; In re Stegall,* 85 B.R. 510 (C.D.Ill. 1987), aff'd, 18 B.C.D. 1237, 865 F.2d 140 (7th Cir.1989); *In re Baugh,* 73 B.R. 414 (Bankr.E.D. Ark.1987); *In re Pecht,* 53 B.R. 768 (Bankr.E.D. Va.1985); *In re East,* 57 B.R. 14 (Bankr.M.D.La. 1985).

sion in *Ahlers* [6], indicates the capital contribution must consist of money or property which is freely traded in the economy. Powlen and Wuhrman, *The New Value Exception to the Absolute Priority Rule*, 93 Comm.L.J. 303 at 310 (Fall 1988). Further, the contribution must be a present contribution, taking place on the effective date of the plan rather than a future contribution. *Stegall*, 85 B.R. at 514. The contributor must also bear an economic risk of loss. *In re Potter Material Service, Inc.*, 781 F.2d 99, 103 (7th Cir.1986).

The Seventh Circuit Court of Appeals in *Potter* formulated a two-part test as a determination of whether the contribution comes within the *Los Angeles Lumber* exception. The Court stated, "The new capital investment must (1) represent a substantial contribution and (2) equal or exceed the value of the retained interest in the corporation." *Potter* at 103. *See also, Teamsters Nat'l Freight Industry Negotiating Comm. v. U.S. Truck Co.; In re U.S. Truck Co.*, 800 F.2d 581 (6th Cir.1986). Nowhere in *Los Angeles Lumber* did the Supreme Court state the contribution must be "substantial." Rather, the form of the contribution must be "money or money's worth." *Los Angeles Lumber*, 308 U.S. at 122, 60 S.Ct. at 11, 84 L.Ed. at 123. Further, *Los Angeles Lumber* requires the infusion to be "reasonably equivalent in value to the interest retained or distribution received." While this requirement shall be discussed below, it should be noted the *Potter* requirement that the contribution be "substantial" is inconsistent with the *Los Angeles Lumber* requirement of "reasonably equivalent." A "substantial" contribution appears to be less than a "reasonably equivalent" contribution. In fact, the Seventh Circuit appears to have eroded the *Potter* "substantial contribution" requirement in *Matter of Stegall*, 18 B.C.D. 1237, 865 F.2d 140 (7th Cir.1989).

...[T]he debtor can retain an interest in the bankrupt estate ahead of his creditors to the extent that he puts new capital into the estate. So if he contributes $50,000 in cash to the bankrupt enterprise, he can retain an interest worth $50,000....

*Id.* at 1237. This statement appears to be a recognition that the contribution must at least equal the value of the retained interest, although this Court wonders if the circuit court opinion assisted the inquiry beyond that of the district court. *See, Stegall, supra,* 85 B.R. 510.

Debtors' plans have contained creative proposals for contributions of new capital, most of which have not passed muster. For example, where the reorganized corporate debtor, rather than the shareholders, borrows money to finance its ongoing operations, the shareholders are not making a capital contribution. *Sawmill*, at 457. Since it is the reorganized debtor borrowing the money, the shareholders have not taken any risk. *Id.* A promise of future service and labor is not a contribution of "money's worth."

Unlike 'money or money's worth', a promise of future services cannot be exchanged in any market for something of value to the creditors today. In fact, no decision of this Court or any Court of Appeals, other than the decision below, has ever found a promise to contribute future labor, management, or expertise sufficient to qualify for the *Los Angeles Lumber* exception to the absolute priority rule.

*Ahlers*, 485 U.S. at ——, 108 S.Ct. at 967, 99 L.Ed.2d at 178. *See also, Potter* at 101. Of course, if the debtor prior to confirmation, through his labor, creates value such as a crop, and contributes the crop to the estate, the value could qualify for the new value exception because it is a tangible, presently contributed asset. *Stegall*, 18 B.C.D. at 1238, 1239, 865 F.2d 140. A shareholder's promise to work for the corporate debtor for below normal wages is an inadequate contribution as well. *Sawmill*, at 455. Further, a promise to fund the distribution to unsecured creditors is not an adequate form of capital contribution be-

---

6. In *Ahlers,* the Supreme Court expressly refused to comment on the continued vitality of "infusion of new capital" exception espoused in

*Los Angeles Lumber* after the codification of the 1978 Bankruptcy Code. *Ahlers,* 485 U.S. at —— n. 3, 108 S.Ct. at 967 n. 3, 99 L.Ed.2d at 177 n. 3.

cause it is a promise to take place in the future. *In re Future Energy Corp.*, 83 B.R. 470, 499 (Bankr.S.D.Ohio 1988).

A contribution of the debtor's exempt veterans monthly pension has been deemed insufficient where the pension would be used for living expenses regardless of whether the Court deems it to be a contribution of new capital. *Stegall*, 85 B.R. at 517. Such a contribution poses no economic risk to the contributing debtor. *Id.* Further, since the pension contribution would be made over the life of the plan, the pension is a future contribution.

Payment by a shareholder of the attorneys fees expended in connection with proposing a plan has been held to be a sufficient form of capital contribution. *In re Future Energy Corp.*, 83 B.R. at 499. The shareholder is making a present contribution in the form of money and is taking an economic risk that the debtor will be successfully reorganized. The sole shareholder's renewal of a personal guarantee of a corporate debt was found to be an adequate form of contribution because accounting experts testified the shareholders/guarantors were taking an economic risk. *Potter* at 103.

■ In the case at hand, the Debtor proposes a contribution of new capital in the form of promissory notes. This Court finds the promissory notes to be an inadequate form of contribution of new capital. First, the Debtor would owe the underlying debt to the unsecured creditors whether it is deemed a contribution of new capital or not. The Debtor, therefore, is not taking an economic risk. Second, since the payments under the promissory notes would be made monthly over ten years, the promissory notes constitute a future contribution rather than a present one.[7]

■ In addition to the contribution constituting "money's worth," the contribution must be "reasonably equivalent in view of all the circumstances to the participation of the [interest holder]...." *Los Angeles Lumber*, 308 U.S. at 122, 60 S.Ct. at 10, 84 L.Ed. at 123. This requires a comparison between the value of the retained interest and the new capital contribution.[8] The amount of the unsecured claims is irrelevant in determining whether the contribution by an individual debtor is reasonably equivalent in value to the retained interest. *Future Energy Corp.*, 83 B.R. at 499.

Where a corporate debtor has numerous shareholders, the plan can always provide for recasting shares in a new corporate debtor with a contribution from a third party or the other shareholders. The contribution, of course, must be reasonably equivalent to the shareholders' interest retained before the shareholder class can participate in the reorganized debtor. The larger corporate debtors may find it easier to meet the "infusion of new capital" exception than debtors which are closed corporations. Peeples, *Staying In: Chapter 11, Close Corporations and the Absolute Priority Rule*, 63 Am.Bankr.L.J. 65, 78 (Winter, 1989). The shareholders of the closed corporate debtor, however, can show a "reasonably equivalent" contribution where the principals infuse new capital equivalent to the going concern value and reissue the shares. *Future Energy Corp.* at 500, 501.

The individual Chapter 11 debtor's task is more complex in contributing capital which is reasonably equivalent in value to the interest retained by this debtor. It is the major hurdle in seeking cramdown. The individual debtor cannot recast his interest in property the way corporate shareholders can recast their shares. Pragmatically, without a benevolent parent or guardian or 100% payment to the unsecured creditors, the individual debtor is always left in the precarious position of determining how much property to liquidate in order to save the remainder.

---

7. For the same reason, this Court could reject the future salary of the Debtor.

8. In the case of a corporate debtor, the valuation is the going concern value based on a capitalization of prospective earnings. *Future Energy Corp.* 83 B.R. at 500, 501 citing Pachulski, *The Cram Down and Valuation under Chapter 11 of the Bankruptcy Code*, 58 N.C.L.Rev. 925, 938–41 (1980).

The individual debtor's dilemma is caused by *Los Angeles Lumber's* direction of the "infusion of new capital" exception to the corporate entity without considering how the exception would affect individuals. The value of the shareholders' retained interest will change drastically depending upon the value of the unsecured claims. The value of the individual or sole proprietor's property, on the other hand, is not effected by the amount of the unsecured claims.

■ In this case, the value of the Debtor's equity interest in the property to be retained totals approximately $7,500.00. The market value of his assets totals $203,750.00. A distinction must be made between the Debtor's equity interest and the value of the property. The fact property has little or no equity does not mean it has no value. The value is the fair market value of the property at the time of confirmation. This valuation is in accordance with *Los Angeles Lumber.* Whether a debtor's contribution is a reasonable equivalent of this value must be determined on a case by case basis. The promissory notes have a value of approximately $32,000.00. Inasmuch as this Court has determined the promissory notes are an inadequate form of capital contribution, it is unnecessary to reach the issue of whether the promissory notes valued at approximately $32,000.00 are reasonably equivalent in value to the property retained.

## CONCLUSION

To reiterate, this Court finds the exception to the absolute priority rule as espoused in *Los Angeles Lumber* has continued vitality under the Bankruptcy Code. The *Los Angeles Lumber* exception has two parts: (1) The contribution must be in the form of "money or money's worth" and (2) The value of the contribution must be reasonably equivalent to the property to be retained.

■ The forms of capital contributions need to be reviewed on a case-by-case ba-

sis. The contributions must be equivalent to "money's worth" for purposes of modifying the absolute priority rule. The factors to be considered are:

1. Is the contribution money or other tangible property?
2. Is the tangible property freely tradeable in the economy?
3. Is the capital investment a present contribution rather than a contribution to take place in the future?
4. Is the capital investment a new contribution to the reorganized debtor?
5. Is the contributor bearing an economic risk by making the contribution?

The second part of the test is the contribution must be reasonably equivalent to the value of the interest to be retained. This is self-explanatory. It must be stressed, however, that the comparison in value is between the contribution and the retained interest. The amount of the unsecured claims is not relevant to the analysis in an individual Chapter 11 case. The amount of unsecured claims may be relevant to the analysis in a corporate Chapter 11 case for purposes of determining the going concern value of the Debtor and therefore the value of the corporate stock being retained by the shareholders.

A review of the case law indicates on rare occasion will an individual Chapter 11 debtor be in a position to cramdown his unsecured creditors and still retain property. It is not, however, impossible.

...[T]he injection of 'outside capital' would allow cramdown in an individual case. It is easier in a corporate context to consider the concept of the injection of outside capital; when an individual is involved, it is difficult to imagine the source of such funds: perhaps a relative or friend might make a gift[9]; perhaps there are other sources ...It would appear in most cases ...[§] 1129(b)(2)(B)(ii) is not available to individuals.

**9.** *See, In re Rudy Debruycker Ranch, Inc.,* 84 B.R. 187 (Bankr.Mont.1988) (Cash inheritance is a sufficient source of contribution).

*East* at 19. *See also, Big Dry Angus Ranch,* 69 B.R. 695, 698 n. 3 (Bankr.Mont. 1987).

Inasmuch as the Debtor's plan violates the absolute priority rule under Section 1129(b)(2)(B)(ii) and does not come within the exception, this Court finds the Second Amended Plan of Reorganization should not be confirmed. The Debtor's Motion for Cramdown must, therefore, be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED the Debtor's Motion for Cram-down be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that confirmation of Debtor's Second Amended Plan be, and the same is hereby, denied. A hearing will be held on June 7, 1989 at 10:30 a.m. to consider dismissal or conversion of the Chapter 11 case.

DONE AND ORDERED.