In re Michael CIPPARONE and Gayle Cipparone, Debtors.

Bankruptcy No. 93–43158.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 13, 1994.

Karen Rowse–Oberle, Gold & Lange, Southfield, MI, for debtors.

Sam Serra, Serra & Isopi, P.C., Warren, MI, for creditor.

## SUPPLEMENTAL OPINION REGARDING NEW VALUE EXCEPTION TO THE ABSOLUTE PRIORITY RULE

STEVEN W. RHODES, Bankruptcy Judge.

In *In re U.S. Truck Co., Inc.*, 800 F.2d 581 (6th Cir.1986), the Court held that the stockholders of a corporate debtor can, consistent with the requirement of 11 U.S.C. § 1129(b)(2)(B)(ii),[1] retain their shareholder interest by making a contribution to the reorganized debtor that is both substantial and essential.[2] The Court thus applied the "new value" exception to the absolute priority rule. The issue before the Court in the present case is whether this "new value" exception can apply in the case of an individual debtor. The Court holds that the "new value" exception to the absolute priority rule is inapplicable because the proposed contribution comes from the debtors themselves rather than from an outside source.[3]

### I.

Debtors Michael and Gayle Cipparone are individuals. Mr. Cipparone is an auto body repairman employed by Dorian Ford. Mrs. Cipparone is currently unemployed.

In 1991, Mrs. Cipparone purchased two TCBY frozen yogurt stores from Macomb Delight, Inc. As part of the purchase agreement, Michael and Gayle Cipparone executed a personal guarantee of the note. The businesses were closed in November of 1992. The debts are approximately $64,000 to secured creditors, $28,300 to the I.R.S. and State of Michigan, $341,000 to Macomb Delight, Inc., an unsecured creditor, and $33,400 to the other unsecured creditors.[4]

1. This section provides for confirmation of a plan over the rejection by a class of unsecured creditors, if, among other requirements, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."

2. The Court relied upon a Supreme Court case decided under the previous Bankruptcy Act, *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939).

3. This opinion supplements an opinion given in open court on May 2, 1994.

4. Amounts derived from the debtor's schedules filed with the Court.

The plan of reorganization proposes to pay the I.R.S. and state tax claims in full, and provides a base dividend of $6,000 to unsecured creditors in which they will share *pro rata*. Macomb Delight voted against the plan; as a result of the size of Macomb Delight's claim, the class of unsecured creditors rejected the plan.

Therefore, the debtors seek to utilize the "cram down" provision of § 1129(b) to obtain confirmation of the plan. They propose to pay approximately $46,000 from wages and income tax refunds over the six-year term of the plan in return for retaining approximately $38,000 in assets. The debtors assert that this infusion of capital into the plan satisfies the "new value" exception to the absolute priority rule under § 1129(b).

Macomb Delight, Inc. objects to confirmation of the plan.

## II.

Only a few cases address the issue of whether the "new value" exception to the absolute priority rule is applicable in chapter 11 cases involving individuals rather than corporations. These cases overwhelmingly hold that if the new value exception is applicable at all, the court should apply it in an extremely narrow fashion.

In *In re East*, 57 B.R. 14 (Bankr.M.D.La. 1985), the court rejected the debtor's argument that because he was insolvent and creditors would receive more under the plan then they would in liquidation, the plan should be confirmed pursuant to § 1129(b). While the debtor did not propose an injection of capital to satisfy the new value exception to the absolute priority rule, the court did consider the issue of what a consumer-debtor might have to do to satisfy the new value exception:

> [I]t might be that the injection of 'outside capital' would allow cram down in an individual case. It is easier in a corporate context to consider the concept of the injection of outside capital; when an individual is involved, it is difficult to imagine the source of such funds: perhaps a relative or friend might make a gift; perhaps there are other sources.

*Id.* at 19. The court further stated, "[it] would appear, in most cases, that ... 1129(b)(2)(B)(ii) is not available to individuals." *Id.*

In *In re Yasparro*, 100 B.R. 91 (Bankr. M.D.Fla.1989), the court observed "on rare occasions will an individual Chapter 11 debtor be in a position to cram down his unsecured creditors and still retain property." *Id.* at 99.

A recent Pennsylvania case, *In re Harman*, 141 B.R. 878 (Bankr.E.D.Pa.1992), distinguished between business and consumer debtors utilizing chapter 11 and the "judge made" rule of the new value exception. The court stated:

> Firstly, ... the purpose of the new value exception is to encourage equity holders of businesses, who wish to retain their interests in a debtor who plan(s) [sic] to retain an ongoing business, to make capital contributions necessary to allow the debtor-business to survive.... [Secondly, in] a Chapter 11 business case, it is assumed that the debtor-business will contribute its future earnings to a plan of reorganization. Such future earnings are not considered an aspect of a new value contribution, but a natural and necessary source of plan funding. New value arises in business cases only if contributions are offered over and above future earnings.... A final distinction between business and consumer debtors arises from the concept of a 'going concern.' It is often important to keep a business operating, at least until it can be sold, to preserve its 'going-concern' value.... On the other hand, there are no comparable considerations which justify keeping the instant Debtors in Chapter 11. The property owned by the Debtors consists of liquid assets and consumer goods, such as their residences, for which there is an available market. The value of such property is unlikely to be greatly enhanced or deflated whether it is sold as a unit or in individual parcels.

*Id.* at 886–87. The *Harman* court considered the decisions of *East* and *Yasparro*, *supra*, in concluding that the only contributions that could be considered as "outside capital" in individual chapter 11 cases are

truly extraordinary contributions from totally new outside sources unrelated, to the debtors' day-to-day earnings. *Harman*, 141 B.R. at 888.

The *Harman* court found that the holding in *In re Henke*, 90 B.R. 451 (Bankr.D.Mont. 1988) epitomized the rule that the contribution had to be extraordinary in order to be considered "new value." *Harman*, 141 B.R. at 888. In *Henke*, a farm-business case, the court held that the debtor's infusion of a very large sum, sufficient to pay all unsecured claims, from a source totally unrelated to the debtor's farm operations,[5] constituted new value and served as an exception to the absolute priority rule.

Ultimately, the *Harman* court questioned whether the new value exception to the absolute priority rule was ever applicable to individual chapter 11 cases, noting that the only successful use of the exception was in *Henke*, an individual farmer-inventor whose farm operation appears to have taken him out of the category of consumer debtor.

### III.

In light of these cases, this Court finds that Michael and Gayle Cipparone's infusion of future earnings and income tax returns in the amount of $46,000 over the six-year life of the plan is not a sufficient infusion of capital to satisfy the "new value" exception to the absolute priority rule. The proposed contribution clearly does not come from an "outside" source. Case law establishes that if the new value exception to the absolute priority rule applies to individual chapter 11 debtors at all, it must only be allowed where the infusion of capital comes from an "outside" source. Moreover, the proposed contribution is not "extraordinary" considering that, the total debt is approximately $466,200, the value of the assets which debtors seek to retain is $38,000, and the proposed contribution of capital is $46,000 over six years.

5. The debtor had invented a timing device used to economize fuel in trucks. The income from the patented device had been a source of substantial and steady income for the debtor. The

### IV.

The Court concludes that this result is consistent with, if not required by, the decision of the Supreme Court in *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In that case, the debtors owned and operated a family farm, and sought confirmation of a chapter 11 plan that did not provide for full payment to unsecured creditors, but did provide for the debtors to retain their interest in their assets, including their farm. The debtors sought confirmation under 11 U.S.C. § 1129(b)(2)(B)(ii), asserting the new value exception to the absolute priority rule. The specific contribution that the debtors proposed was their promise of future labor and management.

The Supreme Court noted initially that the absolute priority rule requires that a dissenting class of unsecured creditors must be paid in full before any junior class can receive or retain any property under the plan. *Id.* at 201, 108 S.Ct. at 966. Thus, the court concluded that the debtors' plan violated the absolute priority rule. After an extended discussion of *Case v. Los Angeles Prods. Co.*, *supra*, note 2, the court further concluded that the debtors' proposed contribution of labor and management was not an adequate contribution to escape the absolute priority rule. The court held, "Unlike 'money or money's worth,' a promise of future services cannot be exchanged in any market for something of value to the creditors *today*." *Ahlers* at 203, 108 S.Ct. at 967.

As in *Ahlers*, the debtors' plan in the present case violates the absolute priority rule. Moreover, as in *Ahlers*, the debtors' promise of future contributions from wages cannot be exchanged in any market for something of value to the creditors today. Indeed, the argument for application of the new value exception in the present case is even weaker than in *Ahlers* because, unlike in *Ahlers*, here the debtors have no ongoing business in which to infuse any "necessary" and "essential" capital.

debtor proposed to invest into the plan the sum of $40,000 to $60,000 per year from the sales of the device.

Accordingly, the Court concludes that the cram down provision of § 1129(b)(2)(B)(ii) is inapplicable in this case because the plan violates the absolute priority rule, and that confirmation of the debtors' plan should be denied.