**In re William S. DAVIS and Linda L. Davis, Debtors.**

**No. 00–00250.**

United States Bankruptcy Court, D. Arizona.

March 14, 2001.

---

Brian Sirower, Quarles & Brady Streich Lang, LLP, Phoenix, Arizona, for debtors.

Robert L. Conn, Newport Beach, California, Steven Keist, Glendale, Arizona, for Bill J. Davis.

## UNDER ADVISEMENT DECISION RE: (1) APPLICATION OF ABSOLUTE PRIORITY RULE; AND (2) DEBTOR'S MOTION TO EXTEND EXCLUSIVITY

CHARLES G. CASE, II, Bankruptcy Judge.

## I. INTRODUCTION

This case presents three distinct questions. First, is the absolute priority rule applicable to the plan proposed by these individual Chapter 11 Debtors? Second, if it is, how, if at all, does the Supreme Court's decision in *203 North LaSalle*[1] affect the Debtors' plan? And, third, should Debtors' exclusivity period be further extended?

## II. BACKGROUND

Debtors William and Linda Davis ("Debtors") collect rents from various interests held by them, including their interests in real property and partnership interests (the "Properties").[2] The estate's largest creditor is Bill J. Davis, Debtor William S. Davis' father, who holds a judgment against the estate that exceeds $1.4 million. That judgment is currently under appeal in the California state courts. Debtors' plan provides that they will issue a note for $400,000 or "such greater amount as found by the Court to pay General Unsecured Claims as much as they would receive in a Chapter 7 liquidation." Under the plan, Debtors will retain the Properties; the semi-annual note

payments will be funded by the distributions received by the Debtors from the Properties until either all unsecured creditors are paid in full or $400,000 (or any greater amount determined by the Court) has been paid. Thereafter, the Debtors will received all distributions from the Properties.

The plan further provides that the Bill J. Davis claim will share pro rata with other unsecured creditors once it is an "Allowed Claim", presumably after all appeals are exhausted and the judgment is upheld. It is clear that if the full amount of the judgment is upheld on appeal, the Bill J. Davis claim will not be paid in full.[3]

The Plan provides that, if the Court determines that "a contribution of new value is necessary for confirmation," then the Debtors will "agree to contribute $100,000 of non-estate funds as their new value contribution," provided, however, that they reserve the right to liquidate the Properties. The Plan states that the purpose of the new value would be to ensure timely performance of their obligations under the Plan and "to avoid adverse tax consequences which might arise from the sale or disposition of the [Properties]." The Plan does not address the source or means of funding the new value; that is left to a separate hearing 60 days after confirmation.[4]

The Plan went to vote and the Bill J. Davis class rejected; other impaired classes voted to accept, satisfying 11

---

1. *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999) ("*LaSalle*").

2. The extent of the Debtors' interests in some of these assets is a subject of the California proceedings.

3. Debtors consistently take the position that the judgment will be reversed and is based

upon fatal errors at the trial court level. However, until such time as it is reversed or modified, it is entitled to full faith and credit here and presumptively supports Bill J. Davis' claim.

4. The Plan contains other options and details; this is not intended as a full explication of its terms but rather only of those terms necessary to determination of the present issues.

U.S.C. § 1129(a)(10). During the same time period, the Debtors moved to extend the 180–day exclusivity period under 11 U.S.C. § 1121(c)(3), in effect urging that they should be entitled to complete the confirmation process for their plan in the absence of a competing plan from Bill J. Davis. Bill J. Davis objected, urging that the Debtors' plan could not be confirmed because it violates *LaSalle* and therefore further exclusivity is unwarranted.[5]

In this context, the Court requested the parties to brief the issue of whether the absolute priority rule applies to Debtors as individual, nonbusiness Chapter 11 debtors and, if so, how the *LaSalle* would apply.

## II. ANALYSIS

### A. Does the Absolute Priority Rule Apply in Individual Cases?

In essence, the absolute priority rule provides that a junior class of creditors or interest holders may not receive or retain any property on account of their claims or interests unless the claims or interests of an objecting senior class are satisfied in full.[6] The Debtors' argument is that it makes no sense to apply the rule in individual cases for two fundamental reasons: first, that the rule was developed in the context of corporate or partnership cases where equity "interests" are held by third parties, not by the debtors themselves;

and second, that it is impossible to apply without, in effect, denying meaningful Chapter 11 relief to individual debtors.

When a Chapter 11 debtor seeks to *cramdown* a plan over the objection of an impaired creditor, two conditions must be met:

First, all requirements of § 1129(a) must be met (save for the plan's acceptance by each impaired class of claims or interests, see § 1129(a)(8)). Critical among them are the conditions that the plan be accepted by at least one class of impaired creditors, see § 1229(a)(10), and satisfy the "best-interests-of-creditors" test, see § 1129(a)(7).... Second, the objection of an impaired creditor class may be overridden only if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." § 1129(b)(1). As to a dissenting class of impaired unsecured creditors, such a plan may be found to be "fair and equitable" only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if "the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of

---

5. It is open to serious doubt whether Debtor would be entitled to an extension of the 180 day exclusivity period in any event, given that it exists to allow a Debtor to obtain acceptances for a consensual plan, not to confirm a cramdown plan. In light of the disposition of the issues in this order, however, it is unnecessary to address that issue.

6. The absolute priority rule is found in 11 U.S.C. section 1129(b)(2)(B), which requires a plan be fair and equitable:

(2) [T]he condition that a plan be fair and equitable with respect to a class includes the following requirements:

\*\*\*

(B) With respect to a class of interests—
(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

such junior claim or interest any property," § 1129(b)(2)(B)(ii). The latter condition is the core of what is known as the "absolute priority rule."

*LaSalle,* 526 U.S. at 441–42, 119 S.Ct. at 1415–16 (citations omitted).

■■■■ There is no dispute that an individual with no ongoing business may be a debtor under Chapter 11. *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). There is also no dispute that some Chapter 11 provisions do not apply to individual, nonbusiness Chapter 11 debtors because Chapter 11's provisions are structured more for corporate debtors. *Id.* Debtors argue that *Toibb* 's rationale strongly supports its conclusion that the rule should not apply to individual, nonbusiness debtors such as themselves. This Court disagrees, finding that *Toibb* stands primarily for the proposition that certain provisions in Chapter 11 have little application to nonbusiness debtors. Whether the absolute priority rule is one of those provisions was not addressed.

However, this Court finds it hard to ignore the United States Supreme Court's language in *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988):

> Under current law, *no* Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections … if it fails to comply with the absolute priority rule.

485 U.S. at 202, 108 S.Ct. at 966 (emphasis added). *Ahlers,* significantly, was the first Supreme Court case in decades to address the issue of whether there was a new value exception to the absolute priority rule and it involved *individual* debtors. In *Ahlers,* debtors operated a family farm and had borrowed money from Norwest Bank over a twenty year period. The loans were secured with farmland, machinery, crops, livestock and farm proceeds. Debtors subsequently defaulted, owing over a million dollars. Debtors filed Chapter 11 to stay the replevin proceedings brought by the Bank. The Bank then sought stay relief, which was ultimately denied upon the court of appeals' conclusion that a plan could be confirmed and that stay relief was therefore not justified. The court of appeals rejected the notion that the absolute priority rule prohibited debtors from retaining an equity interest in their farm where they contributed money, or money's worth, to the reorganized entity. In this case, debtors contributed labor, experience and expertise as new value.

The Supreme Court reversed, stating that, as the law currently stood, a Chapter 11 plan could not be confirmed over creditors' legitimate objections if it failed to comply with the absolute priority rule: "There is little doubt that a reorganization plan in which respondents [debtors] retain an equity interest in the farm is contrary to the absolute priority rule." 485 U.S. at 202, 108 S.Ct. at 966. The Court then refused to find that the contribution of labor, experience and expertise was sufficient to gain the benefit of the "new value" exception to the absolute priority rule.[7]

---

7. Some circuits, including the Ninth Circuit, have recognized an exception to the absolute priority rule often referred to as the "new value corollary" or "new value exception." *See In re Bonner Mall Partnership,* 2 F.3d 899, 910–16 (9th Cir.1993), *cert. granted,* 510 U.S. 1039, 114 S.Ct. 681, 126 L.Ed.2d 648, *vacatur denied and appeal dism'd as moot,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994);

see also *In re 203 LaSalle Street Partnership,* 126 F.3d 955, 964–65 (7th Cir.1997) (joining the Ninth Circuit). Relying on *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 118, 60 S.Ct. 1, 84 L.Ed. 110 (1939), the Ninth Circuit and Seventh Circuit have concluded that an objection by an impaired senior class holder will not bar junior claims holders from retaining property in the debtor

*Id.* at 203–04 & n. 3, 108 S.Ct. at 967 & n. 3. "Unlike 'money or money's worth, a promise of future services cannot be exchanged in any market for something of value to the creditors today." *Id.* at 204, 108 S.Ct. at 967.

Admittedly, the parties in *Ahlers* did not contest the application of the absolute priority rule to the pending Chapter 11 involving individual, nonbusiness debtors. It is disingenuous, however, to conclude that the application of the absolute priority rule to individuals was not at issue. Before the Court could discuss whether the exception applied in the case, it had to conclude that the absolute priority rule itself applied in the first instance.[8] Simply because there was no dispute between the parties regarding that conclusion does not mean the Court did not consider the matter on its own.

Debtor has cited no decision that squarely holds that individual debtors are exempt from the application of the absolute priority rule. Indeed, every case of which the court is aware comes to the opposite conclusion. The most significant is Tenth Circuit's decision in *Unruh v. Rushville State Bank of Rushville, Missouri*, 987 F.2d 1506 (10th Cir.1993), which relied on the Supreme Court's analysis in *Ahlers.* *Unruh* also involved debtors who owned and operated a family farm as a sole proprietorship. The court rejected debtors' argument that the absolute priority rule applied only to corporate reorganizations and that " 'interest holders' were people considered to have separate legal identities from the entity being reorganized, such as stockholders or partners." 987 F.2d at 1508. Contrary to Debtors' argument, the term "interest" is used to refer not only to the interest of equity security holders, but it also subsumes the ownership interest of an individual debtor in his property. *Id.* (quoting 5 Collier on Bankruptcy ¶ 1141.01 at 1141–6 n. 12 (15th ed.1992)). "Because Appellants [debtors] have a right to the future profits of their farms regardless of insolvency at the time of the petition, we think that Appellants [debtors] clearly have interests in their estates in the form of equitable ownership interests." *Id.* (citing *In Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169).

Several published bankruptcy court decisions come to the same conclusion. In *Matter of Yasparro*, 100 B.R. 91 (Bkrtcy. M.D.Fla.1989), the Court acknowledged that the impact upon an individual debtor in applying the rule may be harsher than on the corporate debtor:

---

after reorganization, if the junior claims holders contribute new capital in money or money's worth reasonably equivalent to the property's value and necessary for a successful reorganization of the newly created entity. Because the junior claim holders are contributing new value, they are not retaining an interest in the debtor on account of the junior claim holders' prior equitable ownership. *Id.* The Supreme Court in *Ahlers* expressly declined to decide whether the "new value corollary" or "new value exception" still existed since the codification of the absolute priority rule in Chapter 11. 485 U.S. at 205, 108 S.Ct. at 968. The Court simply concluded that if such an exception existed, the proposed contribution of future services was inadequate to gain the benefit of the exception. *Id.* at 203 n. 3, 108 S.Ct. at 967 n. 3. The Supreme Court took a similar approach in *LaSalle, CITE.*

**8.** Debtors argue that the Supreme Court assumed the absolute priority rule applied, but that is not exactly what the Court said. It did not say that because the parties did not contest the fact that the absolute priority rule applied that it was therefore assuming for purposes of the case that it did apply. The Court definitively stated that "no Chapter 11 reorganization" could be confirmed over creditors' legitimate objections if it failed to comply with the absolute priority rule.

The broad sweep of the term "any property" may be felt to be harsher on the individual than on the corporate Chapter 11 debtor. See, *Stegall*, 85 B.R. at 512. The bankruptcy court in *In re East*, supra, succinctly described the dilemma of individual Chapter 11 debtors seeking to avail themselves of the cramdown provisions of Section 1129(b). Individuals who file Chapter 11 cases must necessarily retain a residual interest in their economic future since there is no effective way to alienate all future accessions to their net worth; therefore, counsel would contend, if this Court is correct that such retention is within the meaning of "property" not allowed to be retained under § 1129(b)(2)(B)(ii), then that subsection must be unavailable to individuals. *East* at 15, n. 1. The Court concluded, "In summary, the jurisprudence apparently unanimously holds that if the Debtor retains any property, even control or the potential for future earnings, the cramdown provisions of Section 1129(b)(2)(B)(ii) are not met." *East* at 17.

Debtors' rejoinder is that the statute provides that the impact of the rule is tested at the level of the "interest" holders in a debtor, not the debtor itself. Because they assert that applying the rule to individual debtors would result in undesirable forced asset sales not otherwise contemplated by the structure of Chapter 11, they in effect throw up their hands, conclude that such an analysis is not "rational" in the case of individuals, and urge that, under the authority of *Toibb*, the rule can, and should, be ignored.

In effect, the Debtors argue that, in a Chapter 11 case, creditors are sufficiently protected by the "best interest of creditors" test of Section 1129(a)(7)—so long as creditors receive at least as much as they would in a Chapter 7 case, they have no cause to complain, even if the Debtor retains interests in property and those creditors are not paid in full. The problem with this position, beyond the obvious issue that the statute does not so provide, is at least two-fold: first, the creditors do not have the protection of an actual Chapter 7 trustee overseeing an actual liquidation of the Debtors' assets and, second, the two tests are targeted at two different issues. As Justice Douglas said in the seminal case on new value, *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 124, 60 S.Ct. 1, 84 L.Ed. 110 (1939):

> To hold that in a § 77B reorganization creditors of a hopelessly insolvent debtor may be forced to share the already insufficient assets with stockholders because apart from rehabilitation under that section they would suffer a worse fate, would disregard the standards of fair and equitable. . . .

In addressing the identical issue in an individual debtor case, the *Yasparro* court held that "the best interest of creditors test arises as a separate criteria to confirmation under Section 1129(a)(7) and is separate and distinct from the requirements of Section 1129(b)." 100 B.R. at 94.

The fact that the application of the law to a certain situation may be inconvenient or painful does not justify ignoring a clearly relevant statute and those cases at all levels that have interpreted it. Therefore, the Court holds that the absolute priority does apply in this case.

## B. How Can the Exception be Met and What is the Impact of *LaSalle*?

■ Certain former partners of the debtor in *LaSalle*, pursuant to the plan, were to contribute new capital to the debtor over a five year period in exchange for entire ownership in the newly reorganized debtor. Only old equity holders were permitted to contribute new capital. The

bank, as the sole member of an impaired class of creditors, objected to the plan, and debtor sought to cramdown the plan.

The Supreme Court concluded that debtor's plan failed to satisfy section 1129(b)(1), again declining to decide whether section 1129(b)(1) includes a "new value corollary or exception," but concluding that a "truly full value transaction ... would pose no threat to the bankruptcy estate not posed by any reorganization, provided of course, that the contribution be in cash or be realizable money's worth, just as *Ahlers* required for application of *Case*'s new value rule." 526 U.S. at 443 and 453–54, 119 S.Ct. at 1417 and 1421–22. The Court went further to say that debtor's plan was doomed because it failed to extend to anyone else any opportunity to compete for the equity or to propose a competing plan: "But before the Debtor's plan was accepted no one else could propose an alternative one, and after its acceptance no one else could obtain equity in the reorganized entity.... This opportunity should, first of all, be treated as an item of property in its own right." *Id.* at 454–55, 119 S.Ct. at 1422. According to the Court, if the new value proposed is to be the best new value available, this should be determined by the market, as opposed to giving old equity a bargain.

> Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity, is a question we do not decide here. It is enough to say, assuming a new value corollary, that plans providing junior interest holders with exclusive opportunities free from competition and without

benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).

*Id.* at 458, 119 S.Ct. at 1424.

Sections 1.45 and 10.5 of Debtors' Plan provide for the "New Value Alternative," permitting Debtors to contribute $100,000 of nonstate funds as their new value contribution if the Court determines that a contribution of new value is necessary to confirm the Plan. There is no provision in the Plan permitting competing plans or any other mechanism for entities to compete with the new value proposed by Debtors, contrary to Debtors' statement otherwise in footnote 2 of their opening brief.

Several bankruptcy courts have concluded satisfaction of the new value exception in an individual case is both necessary and difficult.[9] For example, the Court in *In re Rocha*, 179 B.R. 305 (Bankr.M.D.Fla.1995), stated:

> The new value exception was developed with a corporate debtor in mind. It is much easier to visualize the concept of shareholders contributing new value to the corporation, in the form of new capital, to the debtor/corporation. The exception has been extended to individual debtors, albeit not very successfully. As stated in *Yasparro, supra* at 96, "although it is difficult to perceive how an individual Chapter 11 debtor would meet the requirements of the 'infusion of new capital' exception, this Court can find no reason why the exception should not extend to an individual Chapter 11 debtor." The difficulty with extending the new value exception to an individual is that the new value must come from an "outside" source, meaning it cannot come from the Debtor himself. With a corporation this is quite easy to accom-

---

**9.** Although the Supreme Court has declined to address the issue, it is the law of this circuit that the new value exception does exist. *In re Bonner Mall Partnership,* 2 F.3d 899

(9th Cir.1993) *cert. granted,* 510 U.S. 1039, 114 S.Ct. 681, 126 L.Ed.2d 648, *vacatur denied and appeal dismissed as moot,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).

plish. The shareholders, or others, simply contribute capital to the reorganized entity. However, with an individual debtor, it is harder to accomplish. "It is easier in a corporate context to consider the concept of the injection of outside capital; when an individual is involved, it is difficult to imagine the source of such funds: perhaps a relative or friend might make a gift; perhaps there are other sources." *In re East*, 57 B.R. 14, 19 (Bankr.M.D.La.1985). In *In re Cipparone*, 175 B.R. 643 (Bankr.E.D.Mich. 1994) the court refused to allow individual debtors to contribute future earnings and income tax refunds as new value to fund a reorganization plan, stating that the new value "clearly does not come from an outside source." Another court has noted that in a Chapter 11 business case, with the debtor/business it is assumed that the business will contribute its future earnings to a plan of reorganization. The court noted that future earnings are not considered a new value contribution, but instead are a natural and necessary source of plan funding. New value arises in business cases only if contributions are offered over and above future earnings. 179 B.R. at 307–08.

What then does this mean for these Debtors? First, the current Plan cannot be confirmed because 1) the need to satisfy the new value exception is now definite and not hypothetical; 2) the source and nature of the proposed new value must be disclosed so that a determination can be made whether it is truly from a "new source" and, 3) it fails to use a "market" or "non-exclusive" approach to the source of new value.

**C. Should Exclusivity be Extended?**

■ The issue remains as to what is necessary to satisfy *LaSalle*. The Su-

preme Court expressly did not decide what is necessary to meet its "market test"[10], but did broadly suggest that *either* the right to bid for equity under a plan *or* the opportunity to propose a competing plan would suffice. This Court will not prejudge which of these alternatives must be followed in this case but will decline to extend exclusivity any further. This will give Bill J. Davis the opportunity to propose a competing plan and/or to object to confirmation of the Debtors' plan should they choose to propose a modified plan which continues to vest in themselves the exclusive right to provide new value. In any event, because the Plan currently set for confirmation is not confirmable and because, to be meaningful, the termination of exclusivity must be accompanied by a period within which Bill J. Davis has the opportunity to decide how to proceed, the Court will hold a status conference on March 19, 2001 at 11:00 a.m. to discuss the future of this case in light of today's ruling.

So ordered.