**In re Walter Rodney HENDRIX, Debtor.**

**Bankruptcy No. 90–635–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 19, 1991.

Albert H. Mickler, Jacksonville, Fla., for debtor.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

On February 22, 1990, Walter Rodney Hendrix filed a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code. The debtor submitted an amended plan of reorganization which class VII (Barnett Bank's secured claim) and class VIII (unsecured creditors) voted to reject. The Court entered an order finding that the requirements of § 1129(a) except paragraph 8 were met and debtor filed § 1129(b) motions against the two rejecting classes. A hearing was held on July 3, 1991, at which time the Debtor and Barnett Bank agreed to the treatment of Barnett Bank as a mortgage lienholder under the Amended plan. Thus, the only non-consenting class remaining is the unsecured creditors. Upon the evidence presented, the Court enters the following Memorandum Opinion:

## FACTS

Debtor opened a restaurant known as Key Largo's Seafood and Oyster Bar in August, 1989. The business experienced numerous set-backs, creating a drain on debtor's personal finances. Although married, subsequently Debtor filed an individual chapter 11 petition on February 22, 1990.

On March 4, 1991, Debtor filed an Amended Plan of Reorganization providing for full payment of all tax claims and all secured claims except for Barnett Bank's claim.

Barnett Bank holds mortgage liens on two parcels of Jacksonville, Florida, property: 1) 423 Margaret Street—first mortgage and 2) 7705 Cayman Road—second mortgage. The amended plan proposes to surrender the Margaret Street property to Barnett Bank in complete satisfaction of all the Bank's secured claims. Thus, the Cayman Road property would be released from any and all claims of Barnett Bank.

The unsecured creditors will receive one hundred dollars a month for fifty-four months, to be distributed on a pro rata basis at the end of each calendar year.

Class VII (Barnett Bank) and Class VIII (unsecured creditors) are both impaired and both voted to reject the Amended Plan of Reorganization.

Under the amended plan the debtor retains his equity interest in his residence and in a parcel of rental property.

The payments under the amended plan total approximately $1,800 a month and debtor testified that he earns approximately $1,000 a month. Debtor's wife then testified that she would obligate herself to fund the $800 a month difference.

The sole issue before the court is whether the non-debtor wife's obligation to fund the amended plan is a sufficient "infusion of new capital" to constitute an exception to the absolute priority rule of § 1129(b)(2)(B)(ii).

## DISCUSSION

Section 1129(b)(2)(B) sets forth the parameters for determining when a plan is fair and equitable with respect to a class of unsecured creditors. The standard for "fair and equitable" includes the absolute priority rule which reads:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

. . .

(B) With respect to a class of unsecured claims—

. . .

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

Thus, a junior creditor is prohibited from receiving any distribution under the plan

until all the senior creditors have been paid in full.

In this case the debtor proposes to retain various assets, yet the unsecured creditors will not receive full payment on their claims. This certainly violates the absolute priority rule.

Debtor argues that the "new value" offered by his wife to fund the amended plan payments falls under the judicial exception carved out in *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). Under the exception a junior claimant may retain property or an equity interest, when senior claimants have not been paid in full, if the junior claimant makes a cash infusion which is necessary and substantial to the debtor. *Id.* at 121, 60 S.Ct. at 10. *In re 222 Liberty Associates*, 108 B.R. 971, 983 (Bankr.E.D.Pa. 1990).

The exception provides the debtor with the opportunity to acquire capital necessary to survive. Although more readily applicable to the corporate debtor, the exception is equally available to the individual debtor when the requirements are met. *In re Yasparro*, 100 B.R. 91, 96, 99 (Bankr. M.D.Fla.1989). *See In re Henke*, 90 B.R. 451 (Bankr.Mont.1988).

Since the *Los Angeles Lumber* decision, many courts have considered what constitutes a sufficient capital contribution. In *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), the Supreme Court stated that "a promise of future services cannot be exchanged in any market for something of value to the creditors *today.*" *Id.* at 204, 108 S.Ct. at 967. Consequently shareholders' pledges of their financial standing and continuing management were insufficient to qualify for exception to the absolute priority rule. *Id.* *See In re Stegall*, 865 F.2d 140, 142–44 (7th Cir.1989).

In addition, the contribution cannot be a future contribution, it must be present, taking place at or before the effective date of the plan. *In re Yasparro*, 100 B.R. at 97; *In re Stegall*, 85 B.R. 510, 514 (C.D.Ill. 1987), *aff'd*, 865 F.2d 140 (7th Cir.1989). In fact one court has found that the promise

to fund the distribution to the unsecured creditors is inadequate to meet the exception because it is a promise to take place in the future. *In re Future Energy Corp.*, 83 B.R. 470, 499 (Bankr.S.D.Ohio 1988).

In this case the debtor's wife has testified that she will provide $800 a month to fund the amended plan. This is a promise to make future payments and not a present contribution with value to the unsecured creditors today. Accordingly, the contribution is insufficient to qualify as a new capital contribution exception to the absolute priority rule.

## CONCLUSION

Since the debtor's Amended Plan of Reorganization violates the absolute priority rule of § 1129(b)(2)(B)(ii) and does not come within the exception, this Court finds that the requirements to "cram down" the unsecured creditors have not been met and the Amended Plan cannot be confirmed.

A separate order denying confirmation will be entered consistent with this Memorandum Opinion.

## ORDER DENYING § 1129(b) MOTION, DENYING CONFIRMATION, AND SCHEDULING HEARING PURSUANT TO § 1112

This case came to be heard upon Debtor's § 1129(b) Motions regarding Barnett Bank and the unsecured creditors. Upon the Memorandum Opinion separately entered, it is

ORDERED:

1. Debtor's Amended Plan of Reorganization violates the absolute priority rule under § 1129(b)(2)(B)(ii) and does not come within the new capital contribution exception.

2. Based on an agreement between the parties, Debtor's § 1129(b) motion regarding Barnett Bank is deemed moot.

3. Debtor's § 1129(b) motion regarding the unsecured creditors is denied.

4. Confirmation of Debtor's Amended Plan of Reorganization is denied.

5. Pursuant to § 1112, the Court will hold a hearing on October 17, 1991, at 1:00 p.m. to consider dismissal or conversion of the chapter 11 case.