In re Nicasio D. ROCHA and
Nellie P. Rocha, Debtors.

Bankruptcy No. 93–5189–BKC–3F1.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 27, 1995.

Albert H. Mickler, Jacksonville, FL, for debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court upon a Motion Pursuant to 11 U.S.C. § 1129(b)—Class 17 (Unsecured) (Doc. No. 106) filed by Debtors and a Confirmation Hearing held February 9, 1995. A hearing was held on the Motion, along with the confirmation hearing, on February 9, 1995. Upon hearing the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law regarding the Motion Pursuant to § 1129(b).

### FINDINGS OF FACT

Debtors in this case are individuals who own several commercial rental properties, from which they receive rental income. Debtors filed this Chapter 11 proceeding on November 18, 1993. The Class 17, Unsecured Creditors, have not accepted the Debtors' proposed Plan of Reorganization. The Debtors moved this Court to enter an order confirming their plan notwithstanding the Unsecured Creditors non-acceptance, in ac-

---

**1.** Although this case would not fall under the requirements of the Bankruptcy Reform Act of

cordance with 11 U.S.C. § 1129(b). The Debtors propose in their Plan to grant "new value" to each unsecured creditor by executing a mortgage in favor of the unsecured creditors, to the extent of 20% of their allowed claims. The mortgage would encumber all of the commercial properties owned by the Debtors, and would provide for payments to the unsecured creditors in accordance with the payment treatment of the members of the Class.

Under the terms of the mortgage, the Debtors would pay 20% of each allowed unsecured claim over a period of 73 months from the effective date of confirmation, in proposed equal monthly installments of $200.00. The monthly payments would be divided prorata among the unsecured creditors in proportion to 20% of their allowed claim. The mortgage would use the commercial properties as collateral to back up these proposed payments. According to the Debtors' Disclosure Statement, allowed unsecured claims total $72,115.00.

### CONCLUSIONS OF LAW

11 U.S.C. § 1129 sets forth the conditions for plan confirmation. The conditions are mandatory with the exception of § 1129(a)(8) which requires acceptance of the plan by impaired classes. If an impaired class rejects the plan, the debtor may nonetheless have the plan confirmed by utilizing the cramdown provisions of § 1129(b), which provide that despite the failure to meet the requirement of § 1129(a)(8), the plan shall be confirmed if it does not "discriminate unfairly, and is fair and equitable" with respect to the impaired classes that have rejected the plan.

■■■ The "fair and equitable" requirement under § 1129(b)(2)(B) includes the "absolute priority" rule.

The absolute priority rule, in its simplest terms, requires that creditors of a debtor in bankruptcy reorganization receive payment of their claims in their established order of priority, and that they receive payment in full[1] before lesser interests—

---

1994 because it was filed prior to the effective date, the Court notes that under the new provi-

such as those of [debtors-in-possession]—may share in the assets of the reorganized entity.

*In re Yasparro,* 100 B.R. 91 (Bankr.M.D.Fla. 1989) (Baynes, J.), *quoting* Powlen and Wuhrman, The New Value Exception to the Absolute Priority Rule: Is Ahlers the Beginning of the End?, 93 Com.L.J. 303, No. 3 (Fall 1988). In regards to individual debtors in Chapter 11, the absolute priority rule requires that they pay those claims of creditors who have rejected the Plan in full, before they [the Debtors] can retain any non-exempt property under the Plan. From a theoretical standpoint, the status of Debtors in Chapter 11 are junior to that of even unsecured creditors. Therefore, since the unsecured creditors have rejected the Plan, the Debtors must pay their claims in full, before they retain any non-exempt property. Under the Debtors' proposed Plan, they aim to retain all but two of their commercial properties, and propose to pay only 20% of the unsecured creditors' allowed claims. Therefore, the absolute priority rule becomes a significant factor in the instant confirmation process.

■ There is a judicially created exception to the absolute priority rule, namely the "new value" exception, which the Debtors in the instant case are trying to utilize. This exception allows the Debtor to retain an interest in assets of the estate, when the Debtor invests "new value," or new capital in the estate. The junior interest may then participate in the reorganization, but only to the extent of his or her "new value" contribution. *In re James,* 1992 WL 21365 (Bankr. M.D.Fla.1992) (Paskay, C.J.), *citing, In re Landau Boat Co.,* 13 B.R. 788 (Bankr. W.D.Mo.1981). This exception was first espoused in dicta in *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939), under the old Bankruptcy Act legislation. It was followed by courts all over the country, until passage of the current Bankruptcy Code in 1979. Since that time, there has been a split among the courts, as to whether the exception still exists. *See, e.g., In re Hendrix,* 131 B.R. 751 (Bankr.M.D.Fla. 1991) (Proctor, J.) (new value exception to absolute priority rule still exists under Bankruptcy Code); *James, supra* (Paskay, J.) (exception no longer exists under Code). The Supreme Court expressly refused to resolve the issue of whether the exception is still valid under the Code in *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), stating that they did not need to reach that issue, because if the exception were still valid, the Debtor's proposed contribution of "labor, experience, and expertise" to the reorganized entity, would not qualify as new value.

This Court agrees with those courts who have found that the new value exception to the absolute priority rule does exist under the Code. The exception must now be applied to the facts of this case. As stated previously, Debtors are individuals who propose to place a mortgage on their commercial property, to secure the monthly payments to unsecured creditors under the Plan, paying off a total of only 20% of the allowed unsecured claims.

■ The new value exception was developed with a corporate debtor in mind. It is much easier to visualize the concept of shareholders contributing new value to the corporation, in the form of new capital, to the debtor/corporation. The exception has been extended to individual debtors, albeit not very successfully. As stated in *Yasparro, supra* at 96, "although it is difficult to perceive how an individual Chapter 11 debtor would meet the requirements of the 'infusion of new capital' exception, this Court can find no reason why the exception should not extend to an individual Chapter 11 debtor." The difficulty with extending the new value exception to an individual is that the new value must come from an "outside" source, meaning it cannot come from the Debtor himself. With a corporation this is quite easy to accomplish. The shareholders, or

sions of the Code, in order to satisfy the "fair and equitable" test of "cram down," it appears that a solvent debtor must now pay post-petition and pre-confirmation interest on a claim to have a class considered "unimpaired." Section 1124(3) has been deleted in its entirety, which had previously allowed a class of creditors to be considered "unimpaired" without paying interest on the claim.

others, simply contribute capital to the reorganized entity. However, with an individual debtor, it is harder to accomplish. "It is easier in a corporate context to consider the concept of the injection of outside capital; when an individual is involved, it is difficult to imagine the source of such funds: perhaps a relative or friend might make a gift; perhaps there are other sources." *In re East,* 57 B.R. 14, 19 (Bankr.M.D.La.1985). In *In re Cipparone,* 175 B.R. 643 (Bankr.E.D.Mich. 1994) the court refused to allow individual debtors to contribute future earnings and income tax refunds as new value to fund a reorganization plan, stating that the new value "clearly does not come from an outside source." Another court has noted that in a Chapter 11 business case, with the debtor/business it is assumed that the business will contribute its future earnings to a plan of reorganization. The court noted that future earnings are not considered a new value contribution, but instead are a natural and necessary source of plan funding. New value arises in business cases only if contributions are offered over and above future earnings. *In re Harman,* 141 B.R. 878, 886 (Bankr. E.D.Pa.1992).

The Supreme Court held in *Ahlers, supra* that the new value must be something of value that can be exchanged by the creditors in the market today, not merely a promise of future services. The court in *Hendrix, supra* at 753, held that a non-debtor/wife's proposed contribution to her debtor/husband's plan could not constitute new value because it was a contribution of future payments, not a "present contribution with value to the unsecured creditors today." Even though the wife would qualify as a source of outside capital for purposes of the exception, the payments were to take place on a monthly basis over the course of the Plan. The court found that this was not something of value exchangeable in the market today. "... [T]he contribution cannot be a future contribution, it must be present, taking place at or before the effective date of the plan." *Hendrix, supra,* at 753, *citing, Yasparro, supra* at 97; *In re Stegall,* 85 B.R. 510, 514 (C.D.Ill. 1987), *aff'd,* 865 F.2d 140 (7th Cir.1989).

The *Harman* court distinguished between the theoretical basis of Chapter 11 and the exception for corporate and individual debtors stating,

Firstly, ... the purpose of the new value exception is to encourage equity holders of businesses, who wish to retain their interests in a debtor who plan to retain an ongoing business, to make capital contributions necessary to allow the debtor-business to survive. We reached that result because we believe that such a result would service the primary goal of Chapter 11. That goal is to allow a viable business to remain in existence, thereby benefitting not only the owners of the business, but also benefitting unsecured creditors, who would be unlikely to receive much, if any, recovery in liquidation; all employees of the business, whose jobs and earnings will be saved; and ultimately the American economy in general, which is benefitted by expansion as opposed to contraction of business activity.

It is difficult for this court to see how any of these policy considerations apply to Chapter 11 debtors who are not businesses nor in business, and are simply consumers. The outcome of the case clearly will not benefit any potential employees of the Debtors, as the Debtors hire no employees ... nor will it keep a business running to enhance the economy. The Debtors, unlike a business, will probably survive the instant bankruptcy case physically, whether it remains in Chapter 7 or Chapter 11. *Harman, supra* at 886.

The *Harman* court also distinguished between the policy reasons of keeping a business/debtor in Chapter 11 versus the policy reasons of keeping an individual/debtor in Chapter 11. The court noted that the "going concern" value of a business is much higher, versus selling the business in piecemeal fashion. Selling a corporation as a working corporation would bring a better return for the creditors, rather than just selling off the assets of the corporation. "Liquidation often leads to disposal of inventory or machinery at cut-rate prices." *Harman, supra* at 887. Whereas with a consumer debtor, there are no such concerns. A consumer debtor mere-

ly has assets that would not bring a different price whether they are in Chapter 11 or Chapter 7, and whether the assets are sold as a unit or in individual parcels. "None of the considerations which favor the retention of a debtor as a 'going concern' enters the picture. We therefore can find numerous policy reasons for not extending the application of the new value exemption to consumer debtors very far, if at all." *Harman, supra* at 887.

 Applying this law to the facts of the case at bar, the prospect of placing a mortgage on property of the estate to secure Plan payments, does not satisfy the new value exception for two reasons. One, the new value is not coming from an outside source. The money to fund the payments is not coming from a friend or relative, rather it is coming from the operation of the Debtors' rental property, which is future income. The granting of the mortgage does not inject anything of new value into the estate. Additionally, according to the Debtors' Disclosure Statement, there is no equity in the property. Not only is the mortgage not new value, it is not *value* at all. The Debtors have not contributed anything of value that would be marketable by the creditor. The Supreme Court's dictate in *Ahlers* was that the new value must be something of *present* value exchangeable by the creditor in the market today. A mortgage placed on property in which the Debtors do not have any equity is not value, and it is not new value coming from an outside source.

Therefore, the Court must find that the Debtors' proposed Plan violates the absolute priority rule under § 1129(b)(2)(B)(ii) and does not meet the new value exception to the rule. The requirements to "cram down" the unsecured creditors have not been met. Accordingly, confirmation of the Plan must be denied. A separate order will be entered in accordance with the foregoing.

### ORDER DENYING MOTION FOR 1129(b) RE: UNSECURED CREDITORS AND DENYING CONFIRMATION

This case is before the Court upon a Motion Pursuant to 11 U.S.C. § 1129(b)—Class 17 (Unsecured) (Doc. No. 106) filed by Debtors and a Confirmation Hearing held February 9, 1995. A hearing was held on the Motion, along with the confirmation hearing, on February 9, 1995. Pursuant to the Findings of Fact and Conclusions of Law entered in this case, it is

**ORDERED:**

1. Debtors' Plan of Reorganization violates the absolute priority rule under § 1129(b)(2)(B)(ii) and does not come within the new value exception.

2. The Motion Pursuant to 11 U.S.C. § 1129(b) re: Unsecured Creditors is **DENIED.**

2. Confirmation of Debtors' proposed Chapter 11 Plan of Reorganization is **DENIED.**

3. **THE COURT WILL HOLD A HEARING ON MARCH 16, 1995 AT 9:00 A.M.** in Courtroom 435, United States Courthouse, 311 West Monroe Street, Jacksonville, Florida at which time the Court will consider:

a) Dismissal of the case

b) Conversion of the case to Chapter 7, or

c) Modification of the Plan.

No further notice of the hearing will be given.

**DONE AND ORDERED.**